COMMONWEALTH *vs.* JOSEPH E. DENAULT.

Worcester.   October 2, 1972. — November 6, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Identification. Evidence,* Hearsay, Corroborative evidence.

At a burglary trial, the circumstances of an identification of the de-
fendant as the burglar by the victim on a street to which the victim
had been taken by the police about an hour and three quarters after
the burglary did not require exclusion of an in-court identification
of the defendant by the victim which was supported by an oppor-
tunity to fix the appearance of the burglar in her mind as the
burglar was escaping from her apartment and by her giving a
description of him within minutes thereafter. [566–567]
Testimony by police officers at a criminal trial respecting an identi-
fication of the defendant by the victim, although inadmissible as
hearsay as proof of the truth of the identification was admissible as
proof that the victim made it. [567]

INDICTMENT found and returned in the Superior Court
on November 12, 1969.

The case was tried before *Beaudreau,* J.

*Klari Neuwelt,* for the defendant, submitted a brief.

*John M. O'Connor,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J.   The defendant Denault, convicted after a
trial under G. L. c. 278, §§ 33A–33G, on an indictment
with charges of breaking and entering a dwelling house
at night with intent to commit larceny, and of committing
the larceny of a purse and its contents, seeks reversal on
grounds stemming from the admission of evidence regard-
ing his identification by the victim of the burglary, a Mrs.
Bates-Gee.

While in bed in her first floor apartment at 40 Grand
Street, Worcester, about 11:45 P.M. on August 28, 1969,
Mrs. Bates-Gee observed the figure of a man entering the
room and lifting her purse from a doorknob.   Putting on
her duster, she pursued the intruder and grabbed his

shoulder but then lost her hold as he made his escape through a pantry window. At this point she had a good look at him by the night light in the pantry. A lodger, Robert Ela, had been roused from the television set in another room by the disturbance and Mrs. Bates-Gee's shouts. The two ran through the back hall into the street but the man got away from them. On Grand Street they saw a black sedan with parking lights on and the motor running. The car started up and proceeded some distance on Grand Street; there was a whistle, the car stopped, a figure entered the car, the car door slammed, and the car moved and turned a corner onto Main Street. Ela saw and jotted down the registration number of the car. Police were promptly summoned and Mrs. Bates-Gee and Ela told their stories to Officers Jasper and Ramsdell and another. Mrs. Bates-Gee's description of the intruder was fairly indicative. This was shortly after midnight. Officer Ramsdell, resuming patrol duty, observed a car at about 1:15 A.M. that roughly suited the description and had the reported registration number. He followed the car and drew alongside it on Central Street. The defendant Denault was one of the three occupants. Officer Ramsdell and Officer Jasper (who with other policemen shortly appeared on Central Street) could note that Denault fairly matched Mrs. Bates-Gee's description of the intruder. *Miranda* warnings were given to the men now in custody. Some $150 was found on Denault's person including a folded $2 bill which later figured as telltale proof against him, as it was traceable to the stolen purse.[1]

Officer Ramsdell had radioed to have Mrs. Bates-Gee driven to the police station by a route car, but in fact she was picked up at her house by a cruiser which proceeded to the Central Street location. The police said they had someone and wanted to know whether she could identify him, but during the trip to Central Street there was no

---

[1] There was $12.50 in the purse which was discarded at the scene and returned to Mrs. Bates-Gee with its contents other than the cash.

further talk about identification. As the cruiser reached the scene, Mrs. Bates-Gee saw the black sedan parked near the curb and said that that was the car and the same registration number. When the cruiser pulled up in front of the black car, Mrs. Bates-Gee saw a police car ahead with a man sitting in the back seat. She said without prompting that there was the man and, immediately thereafter, walking over to the police car with an officer, she said that this was definitely the man.

At the trial Mrs. Bates-Gee recounted what she had done and seen and heard as just described. She testified without objection that the man she saw at the pantry window was the defendant now in the court room; objection with exception was taken only to her subsequent reference to the man who fled into the street as "Mr. Denault." She thereafter testified without objection to her identification of Denault at Central Street.

The defendant's first assignment of error is that Mrs. Bates-Gee's in-court identification of the defendant should have been excluded as the tainted result of the Central Street identification which is said to have occurred under improperly insinuating conditions; but the exception taken appears hardly sufficient to raise that point timely or squarely, and the defendant had not made a pre-trial motion to suppress. In all events we think there was no error. The Central Street confrontation occurred about an hour and three-quarters after the burglary as part of a continuation of police activity immediately following the criminal episode. Such prompt meetings of victim and suspect are a routine and quite natural means of assuring reliable identification and preventing unjust detention of the innocent. They can become abusive if carried out in unduly suggestive fashion, but that was not the case here. To be sure, the police may already have been pretty certain of their man and so perhaps did not need an immediate view by the victim to decide whether to hold the suspect or release him and continue their search for the burglar. So, too, there was some degree of suggestiveness, evidently unplanned by the police, in the fact that

Denault was alone in the back seat of the police car when seen by Mrs. Bates-Gee. Considering, however, the "totality of the circumstances" (*Stovall* v. *Denno,* 388 U. S. 293, 302) including the spontaneity of the original identification at Central Street we think there was no denial of due process. See *Commonwealth* v. *Bumpus,* 354 Mass. 494, 501; *Commonwealth* v. *Leaster, ante,* 407, 411; *Commonwealth* v. *McGrath,* 361 Mass. 431. 436–437; *Simmons* v. *United States,* 390 U. S. 377, 384.[2] The in-court identification, moreover, had support apart from the Central Street episode, for Mrs. Bates-Gee had had an opportunity to fix the appearance of the intruder in her mind at the time of his escape and gave a description within minutes thereafter. See *Commonwealth* v. *Leaster, ante,* at 415; *United States* v. *Wade,* 388 U. S. 218, 239–241; *Cooper* v. *Picard,* 428 F. 2d 1351, 1354 (1st Cir.); *S. C.* 316 F. Supp. 856, 859–860 (D. Mass.).

The second error claimed is in the judge's permitting two police officers, Ramsdell and Bryant, to testify to Mrs. Bates-Gee's identification of the defendant at Central Street. Again there is doubt that objection was timely made; the substance of Ramsdell's testimony on that point came in without objection. The testimony was inadmissible as hearsay if received to prove the truth of Mrs. Bates-Gee's identification, but admissible if received as corroboration of the fact that she made the identification. The latter is the sense in which any trier of the facts would naturally view the officers' testimony. A limiting instruction might have been appropriate, see *Commonwealth* v. *Leaster, ante,* at 412, but it was not requested, nor was it required.

*Judgment affirmed.*

---

[2] The dissenting opinion by Brennan, J., in *Kirby* v. *Illinois,* 406 U. S. 682, 698, n. 5, would hold that the strict *Wade-Gilbert* rule as to right to counsel at lineups and the like should apply to a period before indictment, but it is notable that the opinion would still leave room for "on-the-scene encounters shortly after the crime," citing as examples *United States* v. *Davis,* 339 F. 2d 948 (2d Cir.), cert. den. 393 U. S. 987, and *Russell* v. *United States,* 408 F. 2d 1280 (D. C. Cir.), cert. den. 395 U. S. 928.