UNITED STATES of America, Plaintiff,

v.

Jeffrey Theodore COOPER et
al., Defendants.

No. CR–2–77–10.

United States District Court,
S. D. Ohio, E. D.

March 22, 1977.

William W. Milligan, U. S. Atty., Daniel A. Brown, Asst. U. S. Atty., Columbus, Ohio, for plaintiff.

William S. Lazarow, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on defendant Jeffrey Theodore Cooper's motion to suppress as evidence property seized in an "inventory" search of defendant's suitcase and subsequent statements made by the defendant to law enforcement officers. An oral hearing was held in this matter on Wednesday, March 9, 1977, at which time the parties were instructed to submit additional memoranda of law to the Court. These materials are now before the Court and the question is ripe for decision.

Although the motions treat the suppression of property and of statements independently, they are in reality functionally related. The genesis of the question lies in defendant's arrest in Tennessee on charges of flight to avoid prosecution in Ohio. As he was being taken into custody, defendant indicated that he wished to take two suitcases with him. His request was granted and the suitcases were taken separately to the station house of the Chattanooga, Tennessee, police department. Special Agent William Cole of the Federal Bureau of Investigation, who had conducted the arrest with the assistance of the local police, testified at the hearing that the defendant was advised of his *Miranda* rights after he arrived at the jail and was furnished with the standard waiver form, which he executed. Government Exhibit 1. Cole then returned home.

The following morning Cole inventoried the two suitcases. Among the items found were a number of personal checks and books of blank checks. These and other suspicious items were carefully inventoried. Personal effects of the defendant, which were also contained in the suitcases, were not removed and were not inventoried. Surmising that the instruments were stolen, Cole questioned the defendant that afternoon. At this session the defendant was reminded of his *Miranda* rights but the full warnings were not reread to him. The questioning was apparently confined to the possession of the checks, with no mention of the unlawful flight to avoid prosecution which generated the original arrest. During this interrogation various incriminating statements were elicited from the defendant.

Defendant was subsequently returned to Ohio. While in confinement in the Scioto County jail, he contacted Special Agent Bond of the FBI and indicated that he wished to meet with him. Bond and another agent went to the jail on October 26, 1976 where they interviewed the defendant and obtained additional information concerning the checks. Prior to this interrogation the defendant had been informed of his *Miranda* rights and had executed a waiver identical to the one he had executed in Tennessee. There is no indication that the

defendant had been threatened or coerced prior to the interrogation, or that he had received any promises of favorable treatment.

Defendant seeks to suppress use of the checks and other property taken from the suitcases as evidence in a proceeding against him on the ground that the suitcases were searched without a warrant and the search does not fall within any of the recognized exceptions to the warrant requirement. Since the later interrogations were conducted in order to acquire additional evidence about the checks, and largely resulted from the initial discoveries, defendant would suppress them as fruit of the poisonous tree. The government claims that after *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), there is an exception to the warrant requirement for "inventory searches" conducted pursuant to an established procedure. It asserts that the search of the suitcases was solely for the purpose of inventorying their contents and thereby protecting law enforcement officials from possible concealed weapons or charges of misappropriating the contents. With the poisonous taint removed, there should be no objection to use of the custodial admissions as well.

This Court concludes that the government is construing the exception announced in *Opperman* too broadly. In that case, the defendant's automobile was taken to a police impounding lot after a series of parking violations. One of the officers at the lot observed personal property inside the car and caused the car to be searched according to standard procedures and using the standard inventory form. This search resulted in the discovery of marijuana, which the defendant sought to suppress. The Supreme Court held it was admissible despite the lack of a search warrant. The Court pointed first to the "well-settled distinction" between automobile searches and other searches which effects a reduced warrant standard for the former. This distinction is predicated on the exigent circumstances resulting from the automobile's inherent mobility, on the continuing contact between law enforcement officials and automobiles, and on the lower expectation of privacy with respect to automobiles in general.

The Court then held that a Fourth Amendment standard of "reasonableness" should govern the validity of the search, and that under this standard an inventory conducted pursuant to specified procedures of the contents of an automobile which would be impounded for an indeterminate period was reasonable in the absence of any concealed investigatory motive.

█ The circumstances surrounding the search of a suitcase belonging to a custodial defendant are quite obviously distinguishable. Most importantly, the diminished expectation of privacy which permits less stringent warrant requirements in the automobile situation is simply not present. There is no "pervasive and continuing governmental regulation" of suitcases. Even where a preflight search is involved—perhaps the most prevalent impact of governmental authority on private suitcases—it has been held that the search may be undertaken only where its owner manifests an obvious intent to board the aircraft. *See, e. g., United States v. Dalpiaz*, 494 F.2d 374, 376 (6th Cir. 1974); *United States v. Miner*, 484 F.2d 1075, 1076 (9th Cir. 1973).

Nor can the government seriously suggest here that this search was for the "protection" of the defendant's property. Unlike the automobile in *Opperman*, suitcases and similar property are generally kept in a locked room at the police station pending instructions as to proper disposition. The danger of vandalism, which had influenced the *Opperman* decision, is substantially minimized. Moreover, this treatment is generally the same regardless of the nature of the property secured. The government's distinction between the degrees of security required for a diamond necklace and for a pair of used shoes is plausible but simply a makeweight since the government failed to demonstrate that such distinctions in security did exist and would have been followed here.

The argument that the search was necessary to avoid a possible booby-trap is also

easily refuted. No sane individual inspects for booby-traps by simply opening the container. Had the FBI seriously believed that the suitcases contained bombs or other explosives, it would have undertaken the search in a much more circumspect manner.

Finally, the facts of this case do not suggest that the purpose of searching the suitcase was to obtain an accurate inventory of its contents. Special Agent Cole admitted that the only items listed were those which were removed from the suitcase. But these items, in turn, were only those which Cole thought indicative of illegal activity. There was no suggestion at the hearing that value—in contrast to suspected illegality—was the criterion for deciding which items were inventoried. The government's fear of subsequent civil claims· is accordingly reduced to a post hoc rationalization. This Court therefore finds that this warrantless search does not fall within the inventory exception announced in *Opperman.*

The analysis cannot end here, however, as the search might well qualify under one of the other exceptions to the warrant requirement. Most of these are facially inapplicable. There is no suggestion that the checks and securities were in plain view of the arresting officers, or that "exigent circumstances" necessitated the search. It could, however, be argued that the arresting officers had the right to search the suitcases incident to the arrest, and that this right then carried over to a subsequent search at the police station. *See United States v. Edwards,* 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *Coolidge v. New Hampshire,* 403 U.S. 443, 463 n. 20, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers. v. Maroney,* 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). This would be particularly true if, as suggested in *Chambers, supra,* there is no constitutional difference between seizure pending a later warrant on the one hand and an immediate search on the other. *Id.* at 52, 90 S.Ct. 1975. *Chambers,* however, also involved an automobile, and a major predicate underlying the Court's conclusion that there was no such constitutional difference is the reduced expectation of privacy inherent in the automobile. This Court has already observed that there is a higher expectation of privacy for suitcases than for automobiles. *Edwards* involved subjecting the fruits of the search to laboratory analysis at a later time—a question which is concededly not raised here. Thus, it is not a foregone conclusion that either case would support a warrantless stationhouse search simply on the basis of its having been available earlier.

But even assuming the constitutional permissibility of the later search, the necessary predicate—adequate justification for an earlier warrantless search—does not exist because this. Court does not find that the officers had the right to search defendant's luggage at the time of the arrest. There is no suggestion that the defendant had ready access to the suitcases and would have been able to inflict physical harm on the officers. To the contrary, it appears that no attention at all was paid to the suitcases until the defendant indicated that he wished to take them with him to the station. From that point forward, they were within the custody and control of the police. Nothing in those circumstances suggests that a warrantless search would have been permissible. *See, e. g., United States v. Anderson,* 500 F.2d 1311, 1318 (5th Cir. 1974); *United States v. Soriano,* 482 F.2d 469, 472–77 (5th Cir. 1973); *Faubion v. United States,* 424 F.2d 437, 440 (10th Cir. 1970). *See also United States v. Hand,* 516 F.2d 472, 475–76 (5th Cir. 1975). Therefore, any subsequent stationhouse search relying on earlier availability for its permissibility must be constitutionally infirm. Accordingly, the items seized during the search on October 7, 1976, were improperly seized and they may not be used as substantive evidence in a proceeding against this defendant.

Defendant also seeks to suppress the statements which he made to FBI agents during two separate interviews as fruits of this poisonous tree. One set of statements was made during an interview on the afternoon of the same day the agents searched

the suitcases; at this time defendant was reapprised of his *Miranda* rights but was not asked to reaffirm his waiver of the night before. The second set was made almost three weeks later in the Scioto County Jail at a meeting which took place at the defendant's behest. This time defendant was given his *Miranda* warnings and he executed a proper waiver of his rights. Government Exhibit 2.

■ In determining whether evidence acquired after an illegal search is inadmissible as "fruit of the poisonous tree" or whether there has been sufficient attenuation to remove the poisonous taint, the following test is dispositive:

whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975). Factors such as the temporal proximity of the Fourth Amendment violation and the subsequent confession, the presence of intervening circumstances, and the flagrancy of official misconduct will affect the ultimate finding. *Id.* at 603–04, 95 S.Ct. 2254.

■ Applying these factors to the instant circumstances, it is apparent that inculpatory statements made during the first interrogation are fruit of the poisonous tree and inadmissible. The suspicious checks were discovered only a matter of hours before the defendant was questioned about them, and the questioning was largely confined to them. There were no intervening circumstances which might give rise to an attenuation. Legally, the questioning here is practically indistinguishable from the first statement of the defendant in *Brown.*

■ On the other hand, the circumstances of the second interrogation are so clearly attenuated from the illegal search that no poisonous taint remains. This interrogation took place at the defendant's request more than three weeks after the illegal search. At the time it took place no federal charges had been filed against the defendant. Legally, the facts approximate the situation of a defendant who was unlawfully arrested but returns a few days later of his own volition and makes a confession. Under such circumstances, the confession has been held admissible. *See Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, this Court will not suppress statements made during the interrogation of the defendant on October 26, 1976.

WHEREUPON, this Court determines that defendant's motion to suppress as evidence items obtained in a search of his suitcases on October 7, 1976 is meritorious and it is GRANTED. Defendant's motion to suppress as evidence statements obtained from him in two separate interviews is GRANTED with respect to statements obtained during the interview of October 7, 1976, and is DENIED with respect to statements obtained during the interview of October 26, 1976.