## COMMONWEALTH *vs.* ANDREW A. MOON.

Middlesex.  June 13, 1979. — September 27, 1979.

Present: GOODMAN, GREANEY, & KASS, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure. Due Process of Law,* Identification. *Identification.*

The judge at a pretrial hearing in a criminal case erred in suppressing items seized in a warrantless search of the defendant's automobile where the police knew that a criminal assault had occurred and that the operator of the automobile was probably the assailant, where the assailant was at large, and where the searching officer could have reasonably believed that some item bearing on the assailant's identification might be found in the car. [379-380] Dissenting views of GREANEY, J., are stated at 380-383.

Discussion of standards for assessing the constitutional sufficiency of identification procedures. [383-385]

At a pretrial hearing on a defendant's motion to suppress an out-of-court identification, evidence that a police officer, upon hearing the victim of an assault describe his assailant, said in the victim's presence that the assailant must be the defendant and that the officer then opened the defendant's wallet, showed the victim the defendant's automobile license with his photograph on it and asked if the defendant was his assailant warranted findings that the identification procedure was unnecessarily suggestive and that the identification should be suppressed. [385-387]

At a pretrial hearing on a defendant's motion to suppress an in-court identification, there was sufficient evidence to warrant a finding that the Commonwealth failed to establish that the proposed identification was reliable or had a basis independent of an unnecessarily suggestive out-of-court identification. [387-390]

INDICTMENT found and returned in the Superior Court on October 18, 1977.

Motions to suppress evidence were allowed by *St. Cyr,* J., a District Court judge sitting under statutory authority.

The case was transferred to the Appeals Court by *Quirico*, J., following his allowance of the Commonwealth's application for an interlocutory appeal in the Supreme Judicial Court for the county of Suffolk.

*Carol S. Ball*, Assistant District Attorney, for the Commonwealth.

*Richard J. Hayes* for the defendant.

GREANEY, J. Andrew Moon was indicted for the crime of assault by means of a dangerous weapon (G. L. c. 265, § 15B) upon Charles Mosesian, arising out of an incident on the night of June 27, 1977. Prior to trial he moved to suppress a wallet and its contents on the basis that the items had been seized from his automobile by means of an illegal warrantless search. He also sought to suppress an identification made by the victim at the scene (by use of the defendant's picture on his driver's license taken from his wallet) and the victim's proposed in-court identification. After an evidentiary hearing, the motion judge made both oral and written findings, concluded that the search of the car had been improper and that the identifications should be suppressed, and allowed both motions. The Commonwealth was permitted an appeal under the provisions of G. L. c. 278, § 28E; that appeal was transferred here under G. L. c. 211, § 4A. We reverse the allowance of the motion suppressing the items taken in the search and affirm the allowance of the motion suppressing the identifications.[1]

The facts are drawn from the judge's findings, supplemented where appropriate from the evidence presented at the hearing. On June 27, 1977, at approximately midnight, the victim, Charles Mosesian, a sixty-four year old

---

[1] We are not inclined to dispose of this appeal on the grounds raised by the defendant that the Commonwealth did not take a timely exception to the judge's rulings and did not prosecute the appeal diligently. The judge's allowance of a late exception (the morning after the hearing concluded) disposes of the first contention (*Commonwealth* v. *Taylor*, 374 Mass. 426, 430-431 [1978]) and the record discloses reasonable diligence in the pursuit of the appeal.

man, was on the balcony of his eighth-floor apartment looking down at the street, which was approximately sixty feet below. A few people were walking around. He observed a car drive up the street, back up and park across the way. A young man in dark clothing alighted, walked down the street past the entrance to the building, and went under the locked gate where cars drive into the parking area to the building. Having lost sight of the individual, Mosesian went up on the roof, looked down and observed someone walking down under the building where the cars were parked. Again losing sight of the individual, Mosesian returned to his apartment, obtained a pistol, and took the elevator to the parking area, all of which took about three to four minutes. The parking area was partly open and partly enclosed. The enclosed section was designed to hold about ninety-seven cars and was lit by fifty-watt bulbs at intervals of fifteen feet. Mosesian next observed an individual between two cars and asked him what he was doing there. The individual began backing away from Mosesian. At this time the individual, at a distance of approximately ten feet, said, "Don't come near me," and pulled a four to six inch knife out of his pocket. Mosesian informed the culprit that he was armed, pulled his pistol and fired a warning shot. The total encounter lasted for a period of ten to twenty seconds and ended when the individual turned his back and ran away. The police were called while Mosesian remained by the car which he had first seen.[2] Two or three cruisers eventually parked by the car. Watertown investigating officers were informed of the details of the incident. Mosesian testified that he gave a description of the individual who had pulled the knife as someone an inch or so taller than he was, weighing maybe 160 or 170 pounds, and having

[2] Originally the Newton police arrived, but upon discovering that the locus of the crime was in Watertown, declined to investigate and instead stayed by the automobile and with the victim until the Watertown police arrived.

dark hair. The police officer wrote nothing in his police report about the description,[3] but testified that in notes which he "may have made" later that evening, he had written that the individual had "brown eyes and hair, height five feet, seven inches, weight 150 pounds, and swarthy complexion." Upon receipt of this summary of the incident and the general description stated above as to height, weight and dark hair, the officer said to his partner, and Mosesian heard, "Must be Andrew Moon." Shortly thereafter, the police received information (in response to their earlier call to ascertain ownership of the automobile previously pointed out by Mosesian) that the car was registered to Moon. At that point, the investigating officer opened the unlocked door of the defendant's car, searched the front seat, discovered and removed a wallet. The officer opened the wallet, examined its contents, and removed a driver's license. Mosesian recalled that the officer showed him the license, and asked, "Is this the guy?" He replied that it was. The defendant was apprehended about an hour later, about twenty yards from the car. Mosesian was not asked to identify the defendant by means of a lineup or through a photographic array.

Based essentially on these facts, the judge concluded that the police lacked probable cause to search the car and to search and seize the wallet. He also determined, after consideration of some wavering in the victim's testimony, that the identification procedure employed at the scene was unnecessarily suggestive and ordered the identification made from the license suppressed. He concluded that the proposed in-court identification lacked an independent source and ordered it suppressed as well. As to both identifications, he made a special finding based on his assessment of Mosesian's testimony that, apart from the picture and other insinuating influences at the scene,

---

[3] At the hearing the police officer testified that the description was not in his report "because I knew the man."

Mosesian could not have made a trustworthy identification because of his limited opportunity to observe under unfavorable circumstances.[4] A majority of the panel conclude that the judge erred in ruling the search improper and in suppressing the seizure of the wallet and its contents. We all agree, based on the judge's findings which are supported by the evidence, that his suppression of the identifications was warranted.

1. *Search and seizure issues.* Warrantless searches of automobiles are permissible where the search is based on probable cause and exigent circumstances exist. *Carroll* v. *United States*, 267 U.S. 132 (1925). See also *Commonwealth* v. *Barnes*, 2 Mass. App. Ct. 357, 360 (1974) ("[i]n the circumstances of [the] case 'there was a nexus between ... [the defendants'] conduct and the vehicle' sufficient to give rise to probable cause to search the vehicle," quoting from *Commonwealth* v. *Avery*, 365 Mass. 59, 64 [1974]). "The critical question is whether ... [the officer] had ... 'reasonable or probable cause' to believe ... [he would] find ... evidence pertaining to a crime before [he began his] warrantless search." *Commonwealth* v. *Dupont*, 2 Mass. App. Ct. 566, 569 (1974), quoting from *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216, 221 (1968). The majority of the panel base their conclusion upon the following view of the evidence and the reasonable inferences which can be drawn therefrom: The police knew

[4] "[M]y recollection of the testimony from Mr. Mosesian, although he was determined he was going to say what he wanted to say regardless of who attempted to place restrictions on him is [that] he was an honest man ... [who] had some reservations about that identification which had to in my opinion ... to have been corrected in a sense by the photograph."

In this context the recent quotations with approval by Chief Justice Hennessey of the remarks of Judge Carl McGowan (Constitutional Interpretation and Criminal Identification, 12 Wm. & Mary L. Rev. 235, 241 [1970]) should be noted: "An identification made at a lineup with counsel present is more likely to impress the [fact finder] than any number of vehement assertions from the witness stand that the defendant is the man." *Commonwealth* v. *Storey*, 378 Mass. 312, 319 (1979).

that a criminal assault had occurred and that the perpe-trator of the assault was probably the operator of the car. Though the officers were aware of Moon's ownership of the car, they did not know that Moon was the operator, or whether the car had been stolen from Moon. The as-sailant was at large. The searching officer, in the process of an investigation at the scene, could reasonably believe that some item bearing on identification of the missing assailant could be found in the car while the scent was fresh, and material tending to identify the assailant would be "evidence pertaining to a crime." Accordingly, the majority conclude that this belief warranted the search and seizure of the wallet and the license as bearing on identification of the assailant whose apprehension the police could reasonably believe required immediate ac-tion.

The author of this opinion disagrees both with the majority's view of the evidence and with its conclusions and would uphold the judge's ruling that the search was unlawful, because of the Commonwealth's failure to show that the search fell within the narrow class of permissible exceptions to warrantless vehicle searches. *Common-wealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). *Com-monwealth* v. *Harris*, 3 Mass. App. Ct. 343, 346 (1975). The facts are not within the narrow vehicle identification exception created in *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 217-220 (1974), and *Commonwealth* v. *Hae-feli*, 361 Mass. 271, 280-281 (1972), habeas corpus granted sub nom. *Haefeli* v. *Chernoff*, 394 F. Supp. 1079 (D. Mass.), rev'd., 526 F.2d 1314 (1st Cir. 1975). Since the assailant did not return to the car, the police would not have ex-pected to turn up any clothing or other items which the victim might recognize and identify. There was no basis to believe that the assailant might have had any other weapons in the car, and "[a] mere 'hunch' is not enough." *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). *Com-monwealth* v. *Harris*, 3 Mass. App. Ct. at 345-346. The automobile was well guarded and immobilized and the

evidence indicates that the intrusion was a search for evidence rather than a protective search for weapons. *Commonwealth* v. *Silva*, 366 Mass. 402 (1974) (evidentiary search of car improper under *Terry* standards). The car was parked on the street and not in the parking area where the assault took place. There was no reason to believe, if the assailant and the individual who alighted from the car were the same person, that the car had been utilized for any purpose besides the personal transportation of the defendant to the street where he parked. Nor were there observations of any of the types of conduct that have typically been held to create a nexus sufficient to justify a warrantless search of a vehicle. See for example *Cardwell* v. *Lewis*, 417 U.S. 583, 592 (1974); *Texas* v. *White*, 423 U.S. 67 (1975); *United States* v. *Miles*, 445 F.2d 974 (5th Cir. 1971); *United States* v. *Menke*, 468 F.2d 20 (3d Cir. 1972); *United States* v. *Farnkoff*, 535 F.2d 661 (1st Cir. 1976); *United States* v. *Chuke*, 554 F.2d 260 (6th Cir. 1977); *Haefeli* v. *Chernoff*, 526 F.2d 1314 (1975 — all cases where the police possessed information concerning the use of an automobile to commit a crime or had observed the defendant place potential contraband or weapons in the car. Nor was there any evidence that any of the automobiles near which the defendant was found had been tampered with. Contrast *People* v. *Gale*, 9 Cal. 3d 788 (1973). There was no evidence that any assault took place in the car. Contrast *United States* v. *Bowles*, 304 A.2d 277 (D.C. App. 1973). Thus, there is no connection with criminal activity or any other independent reason to believe that the automobile contained weapons or contraband, and there is nothing in the circumstances of this assault which possibly implicates the defendant's means of arrival on the scene so as otherwise to justify a car search.

Two other arguments advanced by the Commonwealth to justify search of the car and the seizure of the wallet and its contents are also without merit. The "plain view doctrine" does not apply for the reasons set forth above and because the principles discussed in *Commonwealth* v.

*Moynihan*, 376 Mass. 468, 472-473 (1978), are not present. Nor was what occurred a valid "inventory search," because the vehicle had not been impounded, and the search took place in the context of a criminal investigation, as opposed to a noncriminal inquiry. *South Dakota* v. *Opperman*, 428 U.S. 364, 376 (1976). See also *United States* v. *Cooper*, 428 F. Supp. 652 (S.D. Ohio 1977); *United States* v. *Jamerson*, 549 F.2d 1263 (9th Cir. 1977); Note, 1 W. New England Law Rev. 101 (1978).

Any theory that the search was needed to identify the operator is refuted by testimony that, before the car was entered, the officers knew the identity of its owner, believed it was not stolen, and had told the victim that Moon "must be" the person he had observed. The search, viewed realistically, and in the light of relevant present case law, was a general exploratory search of the vehicle lacking probable cause at its inception.

In the author's opinion, the generalized search of the materials in the wallet was also constitutionally unwarranted for the reasons discussed at length by the United States Supreme Court in *Arkansas* v. *Sanders*, 442 U.S. 753 (1979). That case held that, even though the police have probable cause to stop a vehicle on the highway because it contains contraband, and probable cause to believe that contraband is inside the vehicle in a suitcase, they may not justify a search of the suitcase as well as the car on the basis of the automobile exception to the requirement for a warrant. This is because a person has a greater expectation of privacy in his personal effects, even though they are temporarily in his car, than he has in the car itself. The author would rule that Moon had a similar expectation of privacy in his wallet, and that no probable cause existed to search the wallet in any event. See also *United States* v. *Berenguer*, 562 F.2d 206 (2d Cir. 1977).

Accordingly, the author would uphold the suppression of the identification at the scene because it stems from the exploitation of an illegal search of the car and invalid

search and seizure of the wallet. *Wong Sun* v. *United States*, 371ʼ U.S. 471 (1963). See also *Commonwealth* v. *Haas*, 373 Mass. 545, 556 (1977).

2. *Identification issues.*

(a) *Identification standards.* In recent decisions the Supreme Judicial Court has described the two prevailing tests for assessing the constitutional sufficiency of identification procedures. The first, the so called "independent source" test stems from the *Wade-Gilbert-Stovall*[5] cases and has been described by the Supreme Judicial Court in this manner: "Under our decisions a criminal defendant has the burden to prove, by a preponderance of the evidence, that the witness was subjected by the State to a pretrial confrontation, either photographic or in person, ʻso unnecessarily suggestive and conducive to irreparable mistaken identification,ʼ[6] as to deny the defendant due process of law. On a showing of such a confrontation, depending on ʻthe totality of the circumstances surrounding it,ʼ evidence of the confrontation must be excluded at trial. Should the prosecution then

---

[5] *United States* v. *Wade*, 388 U.S. 218 (1967). *Gilbert* v. *California*, 388 U.S. 263 (1967). *Stovall* v. *Denno*, 388 U.S. 293 (1967). See also *Simmons* v. *United States*, 390 U.S. 377, 384 (1968), holding that an in-court identification should be set aside only if the pretrial identification was so impermissibly suggestive as to give rise to a "very substantial likelihood of irreparable misidentification."

[6] The word "irreparable" is to be understood in the context of our remarks in *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 392 (1975): "The word ʻirreparableʼ is not the crux of the test. The court in *Neil* v. *Biggers* [409 U.S. 188 (1972)] simply used that word to denote the continuing effect of mistaken identification. The crux is the likelihood of misidentification. A mistaken identification, once made, is likely to be irreparable, as was observed in *United States* v. *Wade* . . . because the subsequent ʻidentificationsʼ are in the usual case only repetitions for different audiences of an initial identification." The difference in language between *Stovall* (conducive to irreparable mistaken identification) and *Simmons* (conducive to a very substantial likelihood of misidentification) is not critical because the United States Supreme Court indicated in *Simmons* that its choice of language in that case was meant to accord with the *Stovall* formulation. 390 U.S. at 384.

desire to offer other identification testimony, it must show by 'clear and convincing evidence' that the identification has a source independent of the suggestive confrontation." *Commonwealth* v. *Venios,* 378 Mass. 24, 26-27 (1979), quoting from *Commonwealth* v. *Botelho,* 369 Mass. 860, 865-868 (1976). The second method of evaluation, commonly referred to as the "reliability test," derives primarily from the decisions in *Neil* v. *Biggers,* 409 U.S. 188 (1972), and *Manson* v. *Brathwaite,* 432 U.S. 98 (1977). Once an identification has been established to be suggestive, this analysis considers whether certain external indicia of reliability outweigh the questionable identification procedure.[7] Because the reliability test has not been accepted as a definitive part of our criminal law. (*Commonwealth* v. *Rodriguez,* 378 Mass. 296, 305 [1979]) judges passing on motions to suppress identifications have been advised by the Supreme Judicial Court to "direct their attention to the issues framed by our prior cases as well as the 'reliability test.'" *Commonwealth* v. *Venios, supra* at 28. The judge in this case did not make separate assessments; rather, his conclusions reject the identification made at the scene as unnecessarily suggestive and conclude that the identification lacked an otherwise trustworthy independent source. The judge's findings and the record are sufficient to permit us to make an assessment under the *Manson* v. *Brathwaite* factors on our initiative without a remand. Throughout our analysis

---

[7] The factors are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* 432 U.S. 98, 114 (1977). See *Commonwealth* v. *Gordon,* 6 Mass. App. Ct. 230 (1978), *Commonwealth* v. *Testa,* 7 Mass. App. Ct. 292 (1979), and *Commonwealth* v. *Sampson,* 7 Mass. App. Ct. 514 (1979). The Supreme Judicial Court has characterized this evaluation as "usually more lenient" than the independent source test. *Commonwealth* v. *Storey,* 378 Mass. 312, 319 (1979).

we keep in mind the narrow scope of our review. *Commonwealth* v. *Murphy*, 362 Mass. 542, 547 (1972). In that decision the standard circumscribing appellate review of trial court findings on identifications was described in this manner: "We cannot properly be asked to revise a judge's subsidiary findings of fact, where they are warranted by the evidence, or to review the weight of the evidence related to the findings. In particular, it is inappropriate to ask us to reverse a judge's findings involving credibility, since he saw the witnesses and we did not." *Id.* at 550-551 (concurring opinion, Hennessey, J.). See also *United States* v. *Bubar*, 567 F.2d 192, 198 (2d Cir. 1976), cert. denied, 434 U.S. 872 (1977) (findings of trial judge as to identification issues entitled to great weight).

(b) *Out-of-court identification.* In light of these standards, we conclude the judge properly found the identification prócedure employed at the scene unnecessarily suggestive. At the threshold the Commonwealth appears to concede the fact of suggestiveness. This concession is amply supported by our cases which have consistently characterized display of a single photograph as "disfavored" (*Commonwealth* v. *Nolin*, 373 Mass. 45, 51 [1977]) because of the "particularly serious dangers of suggestiveness." *Commonwealth* v. *Storey*, 378 Mass. 312, 317 (1979). Federal cases in the area are also in accord in condemning single photographic identifications as objectionably suggestive. *Stovall* v. *Denno*, 388 U.S. 293, 302-303 (1967). *United States ex rel. Gonzalez* v. *Zelker*, 477 F.2d 797, 801 (2d Cir.), cert. denied, 414 U.S. 924 (1973). *United States* v. *Jones*, 517 F.2d 176, 179 (D.C. Cir. 1975). *United States ex rel. Kirby* v. *Sturges*, 510 F.2d 397, 403 (7th Cir.), cert. denied, 421 U.S. 1016 (1975). *Sanchell* v. *Parratt*, 530 F.2d 286, 294 (8th Cir. 1976). *Allen* v. *Estelle*, 568 F.2d 1108, 1112 (5th Cir. 1978).[8] Worsening the situa-

---

[8] The subject was well summarized by Mr. Justice Douglas: "Whatever may be said of lineups, showing a suspect singly to a victim is pregnant with prejudice. The message is clear: the police suspect *this*

tion here was the obvious search of the wallet, which was made in Mosesian's presence, and the police pronouncement that the assailant had to be Moon — a gratuitous suggestion which Mosesian candidly admitted influenced his verification of the picture on the license.

To overcome the problem, the Commonwealth maintains that the procedure was necessarily suggestive in order to afford the police a prompt confirmatory identification of a doubtful suspect. However, the judge's finding, which rejects this argument, is warranted by the evidence. At the time the planned showup occurred the police had already concluded that Moon was the culprit, based inferably on apparent preknowledge of Moon's activities, knowledge that the car belonged to Moon, and on information contained in the wallet. So sure was the investigating officer that he testified he found it unnecessary to take down the description given by Mosesian because he already "knew the man." There was little redeeming need for the showup and no need for the communications that accompanied it.

Of course, as the Commonwealth suggests, there is abundant authority that field encounters happening in the course of police investigation promptly following a crime are expressly approved in this Commonwealth and are commended as sound police practice. *Commonwealth* v. *Bumpus*, 354 Mass. 494, 501 (1968), cert. denied, 393 U.S. 1034 (1969). *Commonwealth* v. *Denault*, 362 Mass. 564, 566 (1972). *Commonwealth* v. *Lifsey*, 2 Mass. App. Ct. 835 (1974). *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). The Commonwealth relies on this precedent as necessitating and vali-

---

man. That carries a powerfully suggestive thought. Even in a lineup *the ability* to identify the criminal is severely limited by normal human fallibilities of memory and perception. When the subject is shown singly, havoc is more likely to be played with the best intended recollections." Dissent in *Biggers* v. *Tennessee*, 390 U.S. 404, 407 (1968), a case in which a conviction was upheld by an equally divided court without majority opinion.

dating the suggestiveness; the judge remained unimpressed. On this record, we are not inclined to substitute our judgment for his, and we agree that this case on its facts falls outside the line of authority that has approved showups promptly after the criminal event. Many arranged encounters within that category are made imperative because of the state of the victim. See, for example, *Stovall* v. *Denno*, 388 U.S. at 302 (victim near death); *Commonwealth* v. *Barnett*, 371 Mass. at 88-89 (victim believed to be seriously wounded); *Commonwealth* v. *Cox*, 6 Mass. App. Ct. 968 (1979) (victim's life in danger). Strict exigencies are not always required but go a long way towards validating a sometimes dubious practice. The case most in support of the Commonwealth's position is the *Denault* case, which upheld an identification where the police, although reasonably sure the burglar had been captured, still conducted a one-on-one view of the suspect by the victim. However, the conclusion in that decision was firmly rooted in authenticating circumstances critically lacking in this case — a description of the intruder characterized as "fairly indicative" (362 Mass. at 565) and the notable absence of any other penetrating police suggestiveness. Significantly for our purposes, *Denault* recognized that even field encounters bear the danger of abuse when carried out in an unduly suggestive fashion (362 Mass. at 566). The judge's finding that undue suggestiveness occurred here is warranted by the evidence and is further buttressed by his special finding that the showing of the license together with the other insinuations at the scene guided a tentative identification to a firm conclusion.

(c) *In-court identification.* Once the identification at the scene was found to be unnecessarily suggestive, the burden rested on the Commonwealth to establish clearly and convincingly that the proposed courtroom identification had an independent source. *Commonwealth* v. *Botelho*, 369 Mass. at 868. The judge's conclusion (though expressed in other words) was that the Commonwealth

failed to demonstrate that an independent basis existed to credit the in-court identification. This conclusion is supported by the evidence. Mosesian's opportunity to observe was seriously diminished by his excited state, by the presence of weak and artificial lighting, and by the short time available for observation under circumstances conducive to an inaccurate identification. The judge's conclusion is also warranted by the absence of any meaningful description, the discrepancies in the poor description given by Mosesian,[9] his testimony that the display of the picture on the license influenced him, and some equivocation on Mosesian's part as to his certainty with regard to that picture. Of the many cases that have considered the problem, the conclusion that the proposed identification had an independent basis, or was reliable, has usually been based on the victim's earlier ability to observe under circumstances conducive to concentration — factors the judge found lacking here.[10]

---

[9] Mosesian's description was confined to the approximate height and weight of the person he encountered and the fact that the culprit had long black hair. No mention was ever made as to complexion, nor were any other distinguishing characteristics observed. In the course of his testimony, when pressed for further descriptive specifications, Mosesian indicated that the man he observed wore a dark jacket but later testified that he could not recall the suspect's wearing a dark jacket. The investigating police officer testified that Mosesian may have indicated that his assailant had "a yellow T-shirt on."

[10] See, for example, *Israel* v. *Odom*, 521 F.2d 1370, 1371-1376 (7th Cir. 1975) (use of sketch, lineup, and show up unnecessarily suggestive, but observation of rapist in predawn light for fifteen minutes plus focus of victim's attention during crime sufficient to establish reliability); *United States* v. *Young*, 529 F.2d 193, 194-195 (4th Cir. 1975) (twenty-minute observation of defendant during crime and ability to recall scar sufficient independent basis for in-court identification); *United States* v. *Wolfish*, 525 F.2d 457, 462 (2d Cir. 1975), cert denied, 423 U.S. 1059 (1976) (three previous face-to-face encounters with defendant sufficient independent basis for in-court identification); *United States ex rel. Hines* v. *LaVallee*, 521 F.2d 1109, 1110-1112 (2d Cir. 1975), cert. denied, 423 U.S. 1090 (1976) (observation of defendant for forty-five minutes in broad daylight is sufficient independent basis for in-court identification; taint from photographic array in which only defendant pictured in hat dissipated); *Heltzel* v. *Cowan*, 518 F.2d

There remains the question not considered by the judge: whether the proposed in-court identification can be considered reliable when weighed under the Manson factors despite the corrupting effect of the suggestive identification at the scene. We think not. The identification gains little support in the application of the first three factors in the Manson assessment (see note 8, *supra*) for the reasons discussed previously, principally the lack of anything resembling a specific description. The fourth and fifth factors (level of certainty demonstrated at the confrontation and lapse of time between the crime and

851, 852-853 (6th Cir.), cert. denied, 423 U.S. 999 (1975) (showup of prisoner at jail after three years suggestive, but prior contact with defendant and opportunity to view him at three-foot distance at time of shooting sufficient to establish reliability); *United States* v. *Pheaster*, 544 F.2d 353, 371 (9th Cir. 1976), cert. denied sub nom. *Inciso* v. *United States*, 429 U.S. 1099 (1977) (in-court identification based on fifteen-year acquaintance, not on suggestive pretrial recording); *United States* v. *Magnano*, 543 F.2d 431, 437 (2d Cir. 1976), cert. denied, 429 U.S. 1091 (1977) (in-court identification of drug dealer based on face-to-face meetings, not on suggestive photo confrontation); *United States* v. *Russell*, 532 F.2d 1063, 1066-1067 (6th Cir. 1976) (pretrial identification impermissibly suggestive because agent informed witness that of two remaining photographs, one not chosen was the suspect; fleeting view of escaping robber insufficient to establish reliability); *United States* v. *Kimbrough*, 528 F.2d 1242, 1246-1247 (7th Cir. 1976) (pretrial photographic identification impermissibly suggestive because only defendant's picture presented, but victim's face-to-face confrontation for several minutes sufficient to establish reliability); *United States* v. *Gidley*, 527 F.2d 1345, 1351 (5th Cir. 1976) (despite suggestive photographic display, opportunity of witness to view robbers riding down main street of small town with heads stuck out windows and red smoke filling car sufficient to establish independent source); *United States* v. *Ivory*, 563 F.2d 887, 888-889 (8th Cir. 1977) (identification of robber by witness who watched as police removed suspect's disguise reliable because of long opportunity to view criminal, close attention, certainty, and short time between crime and identification); *Pruitt* v. *Hutto*, 574 F.2d 956, 957 (8th Cir.), cert. denied sub nom. *Pruitt* v. *Mabry*, 439 U.S. 956 (1978) (in-court identification of rapist reliable even though prosecutor's question, "Is he the one?" while pointing at defendant suggestive; victim well-acquainted with defendant and had had ample opportunity to observe her assailant); *United States* v. *Flickinger*, 573 F.2d 1349, 1358 (9th Cir.), cert. denied,

the confrontation) are submerged into what occurred at the scene, where, as has already been noted, suggestive overtones predominated. In the application of this test, the judge's observations as to the victim's inability to make a reliable identification (see note 4, *supra*) are compelling.

For a brief summary we return to the point of departure. Judges in the trial sessions are in the best position to assess the trustworthiness of identifications and the validity of the procedures that gave rise to them because so much depends on an evaluation of the weight of the evidence and the capacity and credibility of the witnesses. Where a judge correctly applies to the facts found by him pertinent portions of the rules and the burdens of proof laid down in the cases dealing with the subject, it is unlikely that his conclusions will be overturned on appeal.

The allowance of the motion to suppress the identifications is affirmed. The allowance of the motion to suppress the evidence obtained by the search is reversed.

*So ordered.*

---

439 U.S. 836 (1978) (face-to-face interviews in jail cell unnecessarily suggestive, but resulting voice identifications reliable because made by FCC agent, experienced in such identification, who based determination solely on comparison of taped voices of drug smugglers with live voices of defendants); *Allen* v. *Estelle*, 568 F.2d 1108, 1114 (5th Cir. 1978) (although showup in police station after witness saw recovered stolen property suggestive, identification reliable because witness had had clear view of criminal, showup occurred within one and one-half hours after crime, and witness expressed high degree of certainty); *McGuff* v. *Alabama*, 566 F.2d 939, 941 (5th Cir.), cert. denied, 436 U.S. 949 (1978) (although showups in police car and jail cell unnecessary and suggestive, identifications reliable because witnesses had unobstructed view of murderer from ten feet away in midafternoon, confronted suspect within one or two days of crime, and certain of identification).