COMMONWEALTH *vs.* ANTHONY J. SALERNO.

Worcester. December 1, 1969. — January 30, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*"Threshold" Police Inquiry. Arrest. Identification. Larceny. Motor Vehicle,* Larceny. *Grand Jury. Practice, Criminal,* List of Commonwealth's witnesses; Disclosure of evidence before grand jury; Exceptions: failure to save exception; Appeal.

Where it appeared that police officers knew that a robbery had occurred about an hour previously and that an automobile which they found parked on a street was in some way connected with the robbery, that men, strangers in the neighborhood, whom the officers observed walking on the street near the automobile and entering a bar, acceded to a request by an officer to go outside and answer some questions and accompanied him to the automobile, that some twenty minutes later, while the men were standing in a group of people there, one who had seen the men at the scene of the crime arrived and immediately identified them, and that thereupon the officers arrested the men, it was held that the "threshold" inquiry and the arrest were lawful [646–647] and

Commonwealth *v.* Salerno.

that there was no merit in a contention that an in-court identification of the men by the eyewitness at a trial of the men for the robbery was inadmissible by reason of infirmity in the street confrontation and identification [647–648].

A conviction for larceny of an automobile was warranted by evidence that the automobile was missing from a parking lot where its owner had left it, that the defendant was twice seen driving it on a day when he was involved in a payroll robbery, and that the automobile was found later the same day in another parking lot. [648]

There was no error in a noncapital criminal case in denial of a motion by the defendant that he be furnished a list of all prospective witnesses for the Commonwealth. [648]

There was no error in denial of a motion by the defendant in a criminal case to dismiss on the ground that no minutes of the proceedings of the grand jury which indicted him had been kept. [648]

An assignment of error in a criminal case tried under G. L. c. 278, §§ 33A–33G has no standing where it is not based on an exception. [649]

INDICTMENTS found and returned in the Superior Court on January 10, 1967.

Motions by the defendant to be furnished the names of all the Commonwealth's prospective witnesses, to be allowed to inspect the grand jury minutes, and to dismiss were heard and denied by *Beaudreau,* J. The cases were tried before *Meagher,* J.

*T. Philip Leader* for the defendant.

*John M. O'Connor,* Assistant District Attorney, for the Commonwealth.

KIRK, J. The defendant Salerno, with one Postoian, was tried and found guilty on indictments charging conspiracy to commit larceny, the putting of Lorna Kay Rathbun and George W. Norrman in fear for the purpose of stealing from a building, assault with a dangerous weapon, armed robbery and larceny of a motor vehicle. They were tried together with one Bowse, who was charged with conspiracy to commit larceny, and with being an accessory before and after the fact of a felony. The trial was subject to G. L. c. 278, §§ 33A–33G. The case is before us on Salerno's appeal and eleven assignments of error. The summary of the record is accompanied by a transcript of the evidence.

We summarize the evidence. On December 9, 1966, at approximately 11:40 A.M., a man carrying a gun entered the

portable trailer office of the Catalytic Construction Company located on the premises of the Borden Chemical Company on Litchfield Street in Leominster.  He wore a dirty, beige, three-quarter length car coat, a silver colored construction helmet, and a green cloth mask over the lower portion of his face.  With the gun he confronted George W. Norrman, the paymaster of the construction company, and Lorna Kay Rathbun, another employee, and said, "Give me the money."  Norrman handed him a metal box containing $8,385.21, the payroll for the construction workers which was to have been distributed about noon.  The man ran from the trailer.  Norrman followed after a moment, and saw a beige Chevrolet with Massachusetts registration plates, the last three digits of which were "761."  Another man, wearing "something dark around his eyes," was driving the car, which sped away on Litchfield Street.

Mrs. Elizabeth Andreasson was seated in a Volkswagen bus parked across the street from the entrance to the premises, waiting for her husband to collect his pay from the construction company.  She observed a beige-colored car stop on Litchfield Street and back off the street at a right angle.  There were two men in the car.  The driver wore a dark-colored "hard top hat" and sunglasses.  The passenger alighted and started up the hill through the entrance to the chemical company's premises.  He wore a silver "hard top hat," a beige car coat, and a green "scarf" tucked in around the neck of the coat.  Two or three minutes later, he ran back down the hill, carrying a metal box. The green "scarf" was now pulled up over his nose, covering the lower part of his face.  He took off the silver construction helmet and threw it over the fence, pulled the mask down from his face, and got into the car.  As the car sped away, Mrs. Andreasson noted the registration, and testified, "There was either a 'G' or 'C' — and I don't recall right now — but I think, 167, or something like that, at the end, and I knew that I had missed one digit."

At 12:30 or 12:45 P.M., Mrs. Andreasson arrived at the Leominster police station, where she was shown ten or

twelve photographs.  She picked out pictures of Salerno, whom she identified as the driver, and Postoian, whom she identified as the passenger.

An investigator for the United States Treasury Department saw Bowse and Postoian (who wore a dirty, beige raincoat and a green "scarf" across his chest) leave a motel in a maroon Chevrolet station wagon bearing Massachusetts registration number R70–814 at approximately 11 A.M. on December 9.  Another Treasury agent followed a maroon Chevrolet station wagon with that registration number on Litchfield Street on the same morning.  There were three men in the car.  As the station wagon approached the entrance to the Borden Chemical Company, the driver alternately speeded up and applied the brakes, while the two passengers looked around.  The investigator then drove off. A short time later, at approximately 11:15 A.M., he saw the same vehicle parked at a filling station.  Bowse was in the driver's seat; the other men were gone.  When the station wagon left the filling station, the investigator followed it to a parking lot behind the Metropolitan Theatre in Leominster. Shortly after 11:45 A.M., Bowse was joined by two other men, one of whom was recognized as Salerno.  The three men drove off in the station wagon.

Shortly before 1 P.M., Fitchburg police detectives located the maroon station wagon, with registration number R70–814, on Lunenburg Street in Fitchburg.  They observed three men whom they had not seen before in the area walking down the street.  Two of them, Salerno and Postoian, entered a bar.  One of the detectives followed, identified himself, and asked if the two would mind coming outside and answering a few questions.  The two men agreed, and accompanied the detective to the station wagon.  They denied having any connection with the car.

About 1:20 P.M., a Leominster police car, bearing Mrs. Andreasson and one of the Federal agents, approached a group of eight or ten people near the station wagon.  Mrs. Andreasson immediately identified Salerno and Postoian, who were standing in the group which included the bartender

and patrons of a nearby bar. The Fitchburg police then told Salerno and Postoian that they were under arrest.

Robert R. Jollette, the owner of a beige Chevrolet, Massachusetts registration G67–761, testified that he had left it in a parking lot in Worcester on December 8 and that it was missing when he returned the next evening. Salerno was seen in a beige car about 11:15 A.M. on December 9 in Leominster. The Leominster police recovered the car in the parking lot behind the Metropolitan Theatre on the afternoon of December 9. In the car were found a blue construction helmet, a pair of sunglasses and a car coat.

During the trial the judge held a voir dire on some of the issues raised, made findings of fact which are supported by the evidence, denied motions to dismiss and to suppress and furnish evidence and submitted the case to the jury.

1. Salerno contends that the period of time during which he was in the company of the Fitchburg police, i.e., between the time he and Postoian consented to leave the barroom with them and the time they were observed and identified by Mrs. Andreasson in the group on the street, was an unlawful detention. The facts point to the contrary. Apart from the voluntariness of Salerno's act in accompanying the police, were the facts that the Fitchburg police knew that an armed robbery had taken place in Leominster a short time before, that Salerno and his companions were strangers who had not made their appearance in the area until immediately after the robbery, that a maroon station wagon was in some way connected with the robbery, and that a maroon station wagon was parked not far from where the police first observed the men. The information which the officers had and the observations which they made justified the "threshold" inquiry. *Commonwealth* v. *Lehan,* 347 Mass. 197, 201–204. *Commonwealth* v. *Lawton,* 348 Mass. 129, 133. What is reasonable within the principle of threshold inquiry must be decided in each case. *Commonwealth* v. *Lehan,* 347 Mass. 197, 204. An expeditious collateral inquiry which might result in the suspects' arrest

or prompt release is not unreasonable when done to meet "the practical demands of effective criminal investigation and law enforcement." See *Ker* v. *California,* 374 U. S. 23, 34; *Commonwealth* v. *Roy,* 349 Mass. 224, 230; *Commonwealth* v. *Slaney,* 350 Mass. 400, 405–407. See also *Commonwealth* v. *Lawton,* 348 Mass. 129, 132–133. The few minutes taken for Mrs. Andreasson to appear near the street corner and make the identifications were, in the circumstances, reasonably a part of the threshold inquiry. The street inquiry was lawful, and the arrest of Salerno, based on the identification there made, was lawful.

2. Salerno makes the extraordinary argument that the testimony of Mrs. Andreasson should have been suppressed or excluded. We do not pause to comment on the procedural frailties which would be fatal to his contention. We prefer to deal with it, as the parties have argued it, on the merits. Salerno does not contend, and quite rightly, that he was entitled to counsel when the threshold inquiry was under way and the identification made. He does argue, however, that the in-court identification by Mrs. Andreasson was inadmissible because the confrontation on Lunenburg Street "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall* v. *Denno,* 388 U. S. 293, 302.

It is difficult to conceive of a less contrived or a more reliable out-of-court "confrontation" than the one which here was fortuitously produced by the independent observations of an alert citizen and by effective police surveillance, investigation and communications: An eyewitness to a crime committed two hours earlier coming upon, at a public street corner, an impromptu gathering of ten men, most of whom were curious bystanders and no one of whom was under visible restraint, and singling out two of them as the persons she had observed at the scene of the crime and whose pictures in the interim she had picked out from a display of a dozen photographs. Cf. *Commonwealth* v. *Blackburn,* 354 Mass. 200, 203; *Commonwealth* v. *Bumpus,* 354 Mass. 494, 500–501, cert. den. sub nom. *Bumpus* v.

*Massachusetts,* 393 U. S. 1034; *Commonwealth* v. *Cooper, ante,* 74, 83–84. The contention is devoid of merit.

3. The evidence amply warranted Salerno's conviction of larceny of the Chevrolet owned by Jollette. It was taken from a parking lot in Worcester where the owner had left it on December 8. Salerno was twice seen driving it in Leominster on December 9; it was found in a parking lot in Leominster the same day. The jury could infer that Salerno took it. Whether the taking was larcenous was for the jury to decide on all the evidence. *Commonwealth* v. *Cabot,* 241 Mass. 131, 142–143. *Commonwealth* v. *Subilosky,* 352 Mass. 153, 166. One who takes property without the authority of the owner and so uses or disposes of it as to show indifference whether the owner recovers possession may be found to intend to deprive the owner of it permanently.

4. There was no error in denying Salerno's motion that he be provided with the names of all prospective witnesses for the Commonwealth. The judge cannot be required to furnish the defendant with a list of witnesses for the Commonwealth other than those who in a capital case testified before the grand jury. *Commonwealth* v. *Walton,* 17 Pick. 403. *Commonwealth* v. *Edwards,* 4 Gray, 1. *Commonwealth* v. *Jordan,* 207 Mass. 259, 264.

5. Salerno's motion to be allowed to inspect the grand jury minutes was denied. No minutes of the grand jury proceedings were kept. He thereupon filed a motion to dismiss on the ground that the lack of any minutes deprived him of the means to determine whether the grand jury proceedings were properly conducted. There was no error in denying either motion. There is no requirement that grand jury minutes be kept except such as may be called for by G. L. c. 277, §§ 7, 8, 9 and 10. *Jack* v. *United States,* 409 F. 2d 522, 523–524 (9th Cir.). *People* v. *Colletti,* 101 Ill. App. 2d 51, 58. Further, the defendant points to nothing which indicates a "particularized need" for access to minutes if they were available. *Commonwealth* v. *Carita, ante,* 132, 140–141, and cases cited.

6. We do not discuss other alleged assignments of error for the reason that they are not based on exceptions taken at the trial. It is settled that in a noncapital case an assignment of error based on no exception brings nothing before this court for review. *Commonwealth* v. *Theberge*, 330 Mass. 520, 527. We intimate no error.

*Judgments affirmed.*