COMMONWEALTH *vs.* JOHN TOSI. November 23, 1982. There was no error in the denial of the defendant's motion to suppress evidence.

1. In making the initial stop, Officer Howley acted "on concrete facts which supported the reasonable inference that the [unmarked truck] might be the vehicle" involved in the armed robbery of a United Parcel Service (UPS) truck approximately one-half hour earlier. *Commonwealth* v. *Riggins*, 366 Mass. 81, 87 (1974). *Commonwealth* v. *Johnson*, 6 Mass. App. Ct. 944, 945 (1978). The following facts which appear in the findings and rulings of the motion judge support this conclusion.

At 5:45 P.M. of the day of the investigatory stop, Howley learned from police broadcasts that two armed and masked men had robbed a UPS truck in Mansfield a short time before. A few minutes later, he learned from a second broadcast that the truck had been emptied and abandoned. Relying upon his knowledge of the size of UPS trucks (a type of truck with which he testified he was "very familiar") and relying on the geography of the locale, Howley reasonably and astutely inferred that the robbers were likely to use a truck as their getaway vehicle and that they would use Route 106 as an escape route from Mansfield. See *Commonwealth* v.

*Johnson,* 6 Mass. App. Ct. at 945-946. He placed his cruiser at an intersection of Route 106 and, at 6:15 P.M., a time consistent with the "time necessary to travel there from the scene of the robbery, based on the time of the broadcast," *Commonwealth v. Riggins,* 366 Mass. at 87, Howley saw an unmarked truck occupied by two males stop at a light opposite his stakeout point. The truck was in apparent violation of statutory requirements that certain trucks must have owner's markings. After following the truck for approximately one and one-half miles, he forced it to pull over.

Although the judge rejected Howley's testimony that the stop was occasioned by the statutory violation, the fact that the truck had no markings was part of the "whole picture" which aroused Howley's suspicions, *United States v. Cortez,* 449 U.S. 411, 418 (1981), and justified the stop and the threshold inquiry of its occupants. *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968). *Adams v. Williams,* 407 U.S. 143, 145-146 (1972). See *Commonwealth v. Silva,* 366 Mass. 402, 405 (1974). See generally 3 LaFave, Search and Seizure § 9.3(d), at 84 (1978).

2. The evidence also supports the judge's conclusion that the length of the threshold inquiry, here twenty to twenty-five minutes, was not unreasonable in the circumstances. After stopping the vehicle, Howley was informed by the defendant (driver) that he did not have any registration as the truck was rented. While waiting for a license and registration check, Howley asked the two men where they had come from and what they had been doing that day. The defendant replied that he did not know what town he had come from, that he performed "odd jobs" and that he had done "nothing particular" that day. The passenger's replies were equally unresponsive. Unsatisfied with the answers and noticing that the rear compartment of the truck was locked, Howley asked for, but was denied, permission to look inside the truck except from the outside. The evasive replies and lack of cooperation increased Howley's suspicions even though the license and registration check indicated the licenses appeared to be in order and the truck rented. See *Commonwealth v. Riggins,* 366 Mass. at 87-88; *Commonwealth v. Chaisson,* 358 Mass. 587, 590 (1971); *Commonwealth v. Corridori,* 11 Mass. App. Ct. 469, 478 (1981). Howley radioed for a backup cruiser, and someone in his department requested the Mansfield police to come. By this time approximately ten minutes had elapsed from the time of the initial stop. The Mansfield police arrived ten to fifteen minutes later with the driver of the UPS truck. The latter identified the boxes as part of the stolen shipment by stepping on the rear bumper of the truck and looking through the rear window. The defendant and the passenger were then arrested and the truck searched.

The judge found that the "later intrusion," that is the "waiting for the UPS driver and allowing him to look into the van and identify the goods was a reasonable procedure." We agree. The identification of the merchandise was likely to "result in the suspects' arrest or prompt release."

*Commonwealth* v. *Salerno,* 356 Mass. 642, 646-647 (1970). Cf. *Commonwealth* v. *Johnson,* 6 Mass. App. Ct. at 945.

*Judgments affirmed.*

*Barry M. Haight* for the defendant.
*Phillip L. Weiner,* Assistant District Attorney, for the Commonwealth.