COMMONWEALTH *vs.* WILLIAM F. COYLE (and two companion cases[1]). January 20, 1984. *Robbery. Joint Enterprise. Practice, Criminal,* Instructions to jury.

The defendants were convicted on indictments charging them with
_____
[1] One of the cases is against Thomas R. Mullen, Jr., and the other is against Nick Hallas.

assault and battery (G. L. c. 265, § 13A) and unarmed robbery (G. L. c. 265, § 19[b]). The convictions of assault and battery were placed on file with the defendants' consent. The principal issue raised on appeal concerns the denial of the defendants' motions for required findings of not guilty on the robbery indictments.

The Commonwealth based its case on a joint enterprise theory. Under such a theory, the Commonwealth is required to "show that the defendant 'intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime.'" *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509 (1983), quoting from *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973).

Viewing the evidence in the light most favorable to the Commonwealth (*Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 [1979]; *Commonwealth* v. *Bianco,* 388 Mass. 358, 366-367 [1983]), the jury could have found that the three defendants intended to assault and rob the victim, one John Philpin. Contrast *Commonwealth* v. *Hennessey, ante* 160, 165 (1983). The facts are as follows. Philpin, while hitchhiking, was picked up by the three defendants, who gave him a ride. At some point all four men alighted from the car. One of the defendants indicated a desire to obtain some marijuana. Philpin stated that he would walk the remaining way and began to leave. The three defendants began to walk with him and then fell behind. Philpin felt a blow to the back of his head and was spun around by the impact. He observed the defendant Coyle directly in front of him. The other defendants flanked Coyle on both sides. Coyle then began to punch Philpin repeatedly in the face until he fell to the ground. Philpin testified that he felt kicks and blows coming from the direction where the other defendants had been standing. Coyle then demanded that Philpin empty his pockets. He complied, and a single key fell out. Observing that Philpin had nothing of value on his person, Coyle uttered an expletive. At this moment, the defendants Hallas and Mullen turned and left. Coyle then removed Philpin's unlaced sneakers.

The victim testified that while on the ground he observed that Hallas and Mullen were only eight to fifteen feet away at the time Coyle took his sneakers. After removing Philpin's sneakers, Coyle also turned and fled. Soon thereafter, officers of the Hull police came to the victim's aid. Philpin and an officer entered a police cruiser and drove in the direction the defendants had fled. Only minutes had passed when Philpin observed the same three men running down the road. He testified that he saw Coyle throw his sneakers "up into the air". One sneaker went over an embankment and the other landed in the street. Around the same time, another police officer in an unmarked cruiser observed the actions of the three defendants, and testified that he saw Coyle throw something over an embankment.

1. The defendants Hallas and Mullen maintain that they abandoned the joint enterprise prior to the removal of the victim's sneakers. They contend that Coyle was acting independently when he took Philpin's property.

A jury could reasonably conclude beyond a reasonable doubt, however, that the joint enterprise was still in effect. After taking the victim's sneakers Coyle rejoined the other defendants. All three fled the scene together. No withdrawal from the enterprise had been communicated to Coyle. See *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 792 n.6 (1975); *Commonwealth* v. *Farnkoff,* 16 Mass. App. Ct. 433, 447 (1983). At the time Coyle removed Philpin's sneakers, Hallas and Mullen were only a few feet away, and even though they had their backs turned to the victim, they were available "near the scene to render aid, assistance or encouragement . . . or to assist . . . [Coyle] . . . in making an escape from the scene." *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 242 (1982). See also *Commonwealth* v. *Soares,* 377 Mass. 461, 471-472, cert. denied 444 U.S. 881 (1979); *Commonwealth* v. *Borden,* 5 Mass. App. Ct. 847, 848 (1979).

Hallas and Mullen maintain that they lacked the intent to rob Philpin of his sneakers. This is not a case of a plan to commit one offense which is subsequently transformed into a different offense. See *Commonwealth* v. *Washington,* 15 Mass. App. Ct. 378, 383 (1983). See also *Commonwealth* v. *Ferguson,* 365 Mass. 1, 9 (1974). Clearly all three defendants intended to rob Philpin. That one of the defendants, as an afterthought, obtained a pair of sneakers by force does not negate the mens rea required for the commission of robbery. The taking of Philpin's sneakers "was not an outgrowth of a separate and distinct event." *Commonwealth* v. *Casale,* 381 Mass. 167, 175 (1980). Here there was a definite plan to take property from Philpin culminating with the taking of property. The goal of robbery was accomplished. This is so regardless of the relative worthlessness of the booty.

2. Coyle challenges the correctness of that part of the trial judge's charge relating to the intent permanently to deprive an owner of his property. The trial judge correctly instructed the jury that the disposal of property of another with utter indifference to whether the owner recovers its possession may indicate an intent to deprive the owner of it permanently. See *Commonwealth* v. *Salerno,* 356 Mass. 642, 648 (1970). See also *Commonwealth* v. *Mahnke,* 13 Mass. App. Ct. 1057, 1058 (1982); Nolan, Criminal Law § 346 (1976).

3. All three defendants contend that the trial judge committed prejudicial error in instructing the jury on the use of inferences in a criminal trial.[2]

---

[2] The trial judge instructed the jury that "[i]f there is evidence from which the jury could draw two inferences, one favorable to the Commonwealth, and the other not favorable to the Commonwealth, then the jury is permitted to draw either conclusion. And the reason for that is obvious. If you can draw two conclusions from the same set of facts, then there must be an element of reasonable doubt making that inference improper." It is obvious from the last quoted sentence that the flawed instruction was a slip of the tongue. See *Commonwealth* v. *Howell,* 386 Mass. 738, 740 (1982).

We agree that the judge's instructions in this regard were defective. As the defendants failed to object to this part of the judge's charge, "the sole question . . . is whether the charge as given created 'a substantial risk of a miscarriage of justice.'" *Commonwealth* v. *Howell*, 386 Mass. 738, 739 (1982). Viewing the charge in its entirety, we do not think a miscarriage of justice has occurred. By giving a clear explanation of the burden of proof and emphasizing the need for "'moral certainty'" of the defendant's guilt, the judge adequately corrected the error. *Id.* at 740.

*Judgments affirmed.*

*Michael S. Gallagher* for Thomas R. Mullen, Jr.
*Raymond E. Arabasz* for Nick Hallas.
*William M. Leonard* for William F. Coyle.
*Robert M. Payton,* Assistant District Attorney, for the Commonwealth.