COMMONWEALTH *vs.* RAYMOND P. CARRINGTON.

Suffolk.  June 10, 1985. — August 6, 1985.

Present: GREANEY, C.J., KAPLAN, & FINE, JJ.

*Probable Cause.*

Facts and circumstances within the knowledge of two police officers at the moment of a defendant's arrest for burglary, rape, and other crimes were sufficient, if barely so, to warrant a reasonably prudent police officer in believing that the defendant had committed the crimes, where the defendant fit the physical description that the victim had given police a short while earlier; where he gave as his address a location within the apartment complex where the crimes were committed; and where other factors, including the early hour, the defendant's statement that he was late for work, the direction in which he was traveling, the proximity of the location where the defendant was stopped to the scene of the crime, the character of the neighborhood, and the absence of other pedestrians, also pointed toward the existence of probable cause. [527-529]

INDICTMENTS found and returned in the Superior Court Department on September 9, 1983.

A motion to suppress evidence was heard by *James D. McDaniel, Jr.*, J. and the cases were tried before him.

*Willie J. Davis* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

FINE, J.  A Superior Court jury found the defendant, Raymond P. Carrington, guilty of armed robbery, two counts of aggravated rape, armed assault in a dwelling, and aggravated burglary. At trial, the defendant relied upon mistaken identity. His principal argument on appeal is that the judge erred in denying his motion to suppress certain physical evidence and an out-of-court identification, the fruits of what he contends was an arrest made without probable cause. The same judge

heard the motion to suppress and presided over the trial. He made no findings of fact or rulings of law on the motion to suppress. Since the relevant facts are not in dispute, we are in as good a position as the trial judge to determine the legal significance of those facts.

Sometime between 4:00 and 5:00 A.M. on September 7, 1983, the victim was awakened in her apartment on Byron Road in West Roxbury by an intruder who was holding a knife to her throat and who raped her and stole her property. The victim testified that she was able to see her attacker clearly. The apartment complex, into which the victim had moved only a week before, was located in a section of Boston very close to the boundaries of Brookline and Newton. After the rapist left the apartment at about 5:00 A.M., the victim awakened her roommate in another bedroom and poured out to her what had happened. The two women drove to the Brookline police station, where the victim described the rapist to the police. She was then taken to the Beth Israel Hospital, where she gave a further description to an officer from the Boston police department.

At approximately 5:30 A.M., Officer Thomas Ganley of the Newton police department received a radio transmission from his department about the incident, together with a description of the rapist as a black male in his thirties with a beard, a moustache, and a receding hairline, and wearing a running jacket, no shirt, and running shorts. The officer began to canvass the Byron Road area for suspects. He saw nobody in the area until, at about 6:30 A.M., he observed the defendant on LaGrange Street in West Roxbury, not far from the victim's apartment complex, walking away from the complex. The defendant fit the description in all respects except that he was wearing different clothing. Ganley stopped the defendant to conduct a threshold inquiry. The defendant answered all of Ganley's questions. He told Ganley that he was walking to the bus stop on his way to work at Polaroid in Norwood, that he was late for work, and that he lived at an address on Byron Road which was in the victim's apartment complex, two doors away from her apartment. Ganley asked the defendant to wait

for a Brookline or Boston police cruiser, but Ganley did not tell the defendant that he could leave. The defendant testified that he believed he was not free to leave.

Boston police Officer Michael Broderick arrived at the scene on LaGrange Street shortly after 7:00 A.M. Broderick had no additional knowledge about the incident. After briefly conferring with Ganley and questioning the defendant, Broderick placed him under arrest and transported him to the police station. The defendant's clothing and a tote bag he was carrying were searched, revealing items later determined to be inculpatory which were entered in evidence at trial. At around 8:00 A.M., the victim arrived at the police station, where she identified the defendant as the person who had raped her. In a subsequent search of the defendant's apartment, the police found other evidence linking him to the crime.

The defendant argues that at the moment of the arrest on LaGrange Street, the police officers lacked probable cause to arrest him, and that the judge, therefore, erred in denying his motions to suppress all evidence gathered pursuant to his arrest, including the victim's identification of him at the police station. Although we think the facts of this case bring it to the outer limits of probable cause, we do not agree with the defendant's contention.[1] "[P]robable cause [to arrest] exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980).

---

[1] We need not reach the issue whether, if the arrest was made without probable cause, the motion to suppress the evidence should have been allowed. The duration and nature of the detention probably exceeded the bounds of what was permissible for a threshold inquiry of a suspect. *Dunaway* v. *New York*, 442 U.S. 200 (1979). *Florida* v. *Royer*, 460 U.S. 491 (1983). 3 LaFave, Search and Seizure § 9.2 (1978). Contrast *Commonwealth* v. *Tosi*, 14 Mass. App. Ct. 1029, 1030-1031 (1982); *United States* v. *Sharpe*, 470 U.S. 675 (1985). We also need not decide whether, if probable cause was lacking, the detention was justified for purposes of obtaining a relatively prompt identification. See *Commonwealth* v. *Salerno*, 356 Mass. 642, 646-647 (1970); *Commonwealth* v. *O'Loughlin*, 17 Mass. App. Ct. 972 (1984).

When Officer Ganley stopped the defendant on LaGrange Street, he knew only that a rape had occurred in an apartment at a particular address on Byron Road[2] and that the rapist had been described as a black male in his thirties with a receding hairline, a moustache and a beard, and wearing a blue running jacket and dark shorts. The defendant fit the physical description, but he was wearing different clothing. Ganley had sufficient information to stop the defendant briefly and conduct a threshold inquiry pursuant to *Terry* v. *Ohio*, 392 U.S. 1 (1968). If Broderick had no more than this information, we would be inclined to rule that probable cause for the arrest was lacking. See *Commonwealth* v. *Jackson*, 459 Pa. 669, 673-674 (1975). Contrast *Commonwealth* v. *Brown*, 367 Mass. 24, 33 (1975) (police had detailed description of getaway car); *Commonwealth* v. *Farmer*, 5 Mass. App. Ct. 871 (1977) (in addition to bearing reasonably close resemblance to physical descriptions, the robbers wore distinctively colored and patterned shirts which matched the descriptions, and one robber was carrying a knife). A description equally applicable to a large number of people, without more, may not support a finding of probable cause. The defendant had been cooperative in answering the questions put to him by Ganley and Broderick, and there is no indication that he acted suspiciously or appeared nervous.[3] Contrast *Commonwealth* v. *Bowden*, 379 Mass. 472, 476 (1980); *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 234 (1982).

Broderick was also aware, however, that the defendant had told Ganley that he lived in the same apartment complex, two doors away from the apartment in which the victim resided and in which the burglary and rape had taken place. See *Commonwealth* v. *Tarver*, 369 Mass. 302, 308 (1975). This infor-

---

[2] Contrast *United States* v. *Welker*, 689 F.2d 167 (10th Cir. 1982), and *Commonwealth* v. *Bodden*, 11 Mass. App. Ct. 964 (1981), in neither of which the arresting officer had a reasonable basis for assuming that a crime had been committed.

[3] The Commonwealth argues that Broderick, familiar with the area, was suspicious of the defendant because there was a much shorter route to the bus stop than the one the defendant was taking. We do not regard this factor as significant in determining whether probable cause existed.

mation increased the probability that the defendant had committed the crime. It also offered a reasonable explanation for the discrepancy between the clothing the defendant was wearing when he was stopped and the clothing description provided by the victim. The defendant could have changed his clothes in his apartment after committing the crime. See *State* v. *Olsen*, 315 N.W.2d 1, 5-6 (Iowa 1982). Additional factors pointing toward the existence of probable cause included: the early morning hour that the defendant was stopped (6:30 A.M.); the fact that he was late for work; the short distance between the location at which he was stopped and the scene of the crime; and the fact that he was walking away from the scene of the crime. See 1 LaFave, Search and Seizure § 3.4, at 611, 616-617, and cases cited at 617 n.130 (1978). Finally, we take note of the character of the neighborhood in which the defendant was walking. See *Opinion of the Justices*, 333 Mass. 773, 780 (1955); *May* v. *Boston & Me. R.R.*, 340 Mass. 609, 612 (1960). It was an area which was not urban in character; it was composed of cemeteries, woods, and some residences; and it was lightly travelled by pedestrians. Officer Ganley, monitoring the area for an hour, beginning shortly after the incident, saw no one else in the vicinity, let alone a person fitting the description given by the victim. Thus, the facts and circumstances within the knowledge of the investigating officers at the moment of the arrest in our view were sufficient, if barely so, to warrant a reasonably prudent police officer in believing that the defendant had committed the burglary and rape. Officer Broderick, therefore, had probable cause to arrest the defendant. *Commonwealth* v. *Cass*, 358 Mass. 805 (1970). *Commonwealth* v. *Storey, supra*. *Commonwealth* v. *Bowden, supra*. *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). *Commonwealth* v. *Howell*, 394 Mass. 654, 658 (1985).[4]

---

[4] As we read the record of the motion hearing, it appears to us that there may be an additional basis for a finding of probable cause. The victim testified that she had a conversation with a Brookline police officer concerning the incident, but she was unable to recall the details of that conversation. At the Beth Israel Hospital she spoke to a Boston police officer and described the incident to him in greater detail. She thought, but was not certain, that

We have considered the defendant's contention that, over his objections, the prosecutor in his closing argument injected his personal belief into the case, sought unfairly to elicit sympathy from the jury, and commented on matters not in evidence. We find no merit in any of those contentions.

*Judgments affirmed.*

---

she told the Boston officer that, while in her apartment, the culprit had told her that he lived in the same complex. At trial she testified that the assailant had told her that he lived in the complex. The conversation with the Boston officer at the hospital most likely occurred before the defendant was placed under arrest because the officer testified that he had returned to the station by 7:00 A.M. The Brookline, Newton and Boston officers were engaged in a cooperative effort in the investigation of this incident. When an arrest is made in the course of such an investigation, the knowledge of one police officer is attributable to all. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982).