COMMONWEALTH vs. KEVIN M. GAGNE.

No. 88-P-186.

Plymouth. March 13, 1989. — June 5, 1989.

Present: BROWN, DREBEN, & WARNER, JJ.

*Identification. Probable Cause.*

A criminal defendant, seeking to suppress evidence of in-court identifica-
tions by the victim of an assault in a dwelling, did not meet his burden
of demonstrating that the identification procedure used was so suggestive
as to deny him due process, where the victim had been unable to identify
the defendant from his photographic identification card, shown to her
reasonably promptly after the event, and where there had been no in-per-
son one-on-one confrontation resulting in an out-of-court identification.
[427-429]
The arrest of a criminal defendant for burglary and assault in a dwelling
was based on probable cause, thus his motion to suppress, as fruit of
an illegal arrest, an inculpatory conversation between the defendant and
his mother at a police station was properly denied. [429]


INDICTMENT found and returned in the Superior Court De-
partment on May 21, 1985.

A pretrial motion to suppress evidence was heard by *Harry
J. Elam*, J., and the case was tried before *Guy Volterra*, J.

*Jane Larmon White*, Committee for Public Counsel Services,
for the defendant.

*Linda M. Fleming*, Assistant District Attorney, for the Com-
monwealth.

WARNER, J. After a jury trial in the Superior Court, the
defendant was convicted of burglary and assault on an occupant
of a dwelling. On appeal, he alleges error only in the denial
of his motion to suppress in-court identifications by the victim
and an inculpatory postarrest conversation between the defend-
ant and his mother.

We sketch the facts essential to our decision from the evidence received at the suppression hearing.[1] Some time in the late night of July 14, 1984, an intruder entered the bedroom of the thirteen year old victim. The victim awoke, sat up in her bed, and observed (a wall light was on) a man crouched at the foot of the bed. At some point, the victim saw the man's face for at least a minute from the bridge of his nose to the top of his head; she observed what she described as distinctive "royal blue eyes." Twice the victim saw a silver "pinky" ring which the man wore on his right hand. At times during the episode, the victim was able to see the man's full body (but not the face) and clothing. The victim was assaulted, she screamed, her mother entered the room, and the intruder fled through a window. The victim described the man as being about five feet, eight inches tall, lean in build, and wearing a medium grey sleeveless "muscle" shirt and dark blue or black pinstriped pants; he had medium brown wavy hair which was not long.

The police arrived within minutes, and the victim gave them a description of the intruder. A Scituate police officer on foot patrol in the area received a police radio broadcast giving a description of the suspect as being about five feet, eight inches tall, with brown wavy hair, and wearing dark pinstriped pants and a dark muscle tee shirt. Thereafter, the officer observed the defendant walking out of Otis Street, where the victim lived, and about six or seven hundred feet from her home. The officer radioed for backup assistance and followed the defendant into the Clipper Ship restaurant, which the officer estimated to be three to six hundred feet from Otis Street. The defendant accompanied the officer outside and was advised of his Miranda rights; other police officers arrived on the scene.

Some time after midnight, the police told the victim they had a suspect and would like to see if she could identify him.

---

[1] The judge's subsidiary findings are inadequate. "[T]he omission is not fatal here where the ultimate conclusion is clearly evident from the record. . . . The judge's denial of the defendant's motion implies resolution of factual issues in favor of the Commonwealth . . . ." (Citations omitted.) *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 n.2 (1984).

The victim was taken in a police cruiser to the Clipper Ship parking lot, where the defendant was being detained by the police. While there, the victim did not leave the cruiser. She was shown a photographic identification card given to the police by the defendant, but she could make no identification because the eyes in the photograph were not clear; she could not make out the color. The victim was in the parking lot five to ten minutes. She observed a man standing in the lot with three or four police officers around him. The victim was not, however, brought close enough to the defendant so that she could attempt a positive identification of him as the intruder.[2]

While in the cruiser in the parking lot, the victim gave police officers the description of the "pinky" ring which she had observed on the right hand of the intruder. Officers went to the defendant and observed such a ring on the defendant's right hand. The defendant was then placed under arrest. That evening, at the police station, an officer overheard a conversation between the defendant and his mother, in which the mother said: "You're in trouble now — why did you do it?"; and the defendant replied: "I don't know, I was drunk."

1. The defendant argues that the events in the Clipper Ship parking lot were so impermissibly suggestive of the defendant as to require suppression of any subsequent in-court identifications made by the victim,[3] absent a showing by clear and convincing evidence of an independent source for, or the reliability of, the later identifications. See *Commonwealth* v. *Venios*, 378 Mass. 24, 30 (1979); *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. 574, 576-578 (1984). A defendant has the burden of showing, by a preponderance of the evidence, that procedures used at a particular photographic or in-person confrontation were "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the defendant due process of law. *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967). *Commonwealth* v. *Venios, supra* at 29. *Commonwealth*

---

[2] The victim first identified the defendant at a probable cause hearing. She also made identifications at the suppression hearing and at trial.

[3] No other identification procedures were employed.

v. *Thornley*, 400 Mass. 355, 363 (1987). *Commonwealth* v. *Key*, 19 Mass. App. Ct. 234, 239 (1985). Such a showing must depend on the totality of the circumstances of the challenged confrontation. See *Commonwealth* v. *Simmonds*, 386 Mass. 234, 239 (1982); *Commonwealth* v. *Key*, 19 Mass. App. Ct. at 239. We hold that the defendant has not met his burden in this case.

Even in those cases where one-on-one photographic or in-person confrontations have yielded positive identifications, "[w]e have repeatedly held that due process rights are not violated when police arrange [the] . . . confrontation between the victim and [the] suspect promptly after a criminal event occurs." *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985). Here, the victim was brought to the parking lot reasonably promptly after the crime, but she did *not* make a positive identification because she was unable sufficiently to view the defendant either in the photograph or in person. The police were under no obligation to arrange a one-on-one in-person confrontation. Indeed, while constitutionally permissible, such encounters continue to be "disfavored." *Commonwealth* v. *Santos*, 402 Mass. 775, 781 (1988). There were no special elements of unfairness during the events. See *Commonwealth* v. *Barnett*, 371 Mass. 87, 93 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 372 (1980).[4] "The [victim knew] [s]he would not be asked to make an identification unless the police had reason to suspect the detainee's involvement." *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. at 583. *Commonwealth* v. *Harris, supra.*

As we have concluded that the parking lot incidents were not unduly suggestive of the defendant, there is no occasion to consider the question whether the victim's subsequent in-court identifications had an independent source or were otherwise reliable. See *Commonwealth* v. *Cincotta*, 379 Mass. 391, 397 (1979); *Commonwealth* v. *Harris, supra* at 300; *Common-*

---

[4] There is some conflict in the testimony with regard to the intent of the police in bringing the victim to the parking lot. It is enough to say that we are concerned only with the effect, in terms of suggestiveness, of what the police did.

*wealth* v. *Coy, supra* at 376. It was for the jury to decide the weight to be given to the victim's in-court identifications in all of the circumstances, which were thoroughly explored at trial. See *Commonwealth* v. *Cincotta, supra*; *Commonwealth* v. *Coy, supra* at 375. The jury were fully and correctly instructed in this respect.

2. The defendant argues that the conversation at the police station with his mother should have been suppressed because it was the fruit of an illegal arrest. Since there was no in-person one-on-one confrontation and the victim was unable to identify the defendant from the photographic identification card or otherwise, the defendant contends that his arrest was without probable cause.

As we have said, the police were not obligated to arrange a one-on-one in-person confrontation. Probable cause to arrest may, of course, rest on other grounds. Cf. *Commonwealth* v. *Coy, supra* at 375. "[P]robable cause [to arrest] exists where, at the moment of the arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). *Commonwealth* v. *Carrington*, 20 Mass. App. Ct. 525, 527 (1985). See *Commonwealth* v. *Howell*, 394 Mass. 654, 658 (1985). Here, a police officer spotted the defendant walking away from the scene of the crime and a short distance therefrom. The description the officer had been given substantially matched the defendant's. Just before the arrest, the victim had described the ring the intruder had on and its location. Both matched a ring worn by the defendant. There was probable cause to arrest, and thus there was no error in the denial of the motion to suppress the conversation.[5] See *Commonwealth* v. *Carrington, supra* at 528-529.

*Judgment affirmed.*

---

[5] Following the arrest, the police lieutenant in charge of the investigation noticed white paint in the defendant's hair; the victim had previously stated that the intruder had white streaks in his hair. The lieutenant also observed white powder on the defendant's left shoe. In examining the victim's bedroom the lieutenant saw a footprint in white powder on newpapers beneath the window.