**UNITED STATES of America, Appellee,**

v.

**Ronald CZAJAK, Defendant, Appellant.**

**No. 89–2053.**

United States Court of Appeals,
First Circuit.

Heard April 4, 1990.

Decided July 18, 1990.

---

John W. Laymon with whom Laymon & Associates, Boston, Mass., was on brief, for defendant, appellant.

Alexandra Leake, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

After finding that Ronald Czajak violated conditions of his probation, the United States District Court for the District of Massachusetts revoked his probation and sentenced him to 18 months of imprisonment. Although Czajak makes various assignments of error, for the reasons delineated below, we affirm the district court's decision in all respects.

## I. BACKGROUND

On June 22, 1987, Ronald Czajak pled guilty to all counts of an indictment charging him and another defendant with mail fraud, wire fraud, and bank fraud in connection with the operation of CVM Corporation ("CVM"), a corporate relocation consulting firm managed by Czajak and a co-defendant. The indictment alleged that between November, 1983, and June, 1986, Czajak and the co-defendant defrauded CVM clients of approximately $1 million by selling homes and not forwarding the proceeds to their clients.

On September 10, 1987, the district court sentenced Czajak to a prison term of five years, and the co-defendant to a term of three years. The district court suspended the execution of both sentences, and placed both defendants on five years of probation. Among the terms and conditions of probation was the requirement that each defendant "refrain from violation of any law (federal, state, and local)."

On July 10, 1989, petitions were filed alleging that both defendants had violated the above-quoted term and condition of probation, as well as three others. The petition essentially stated that from March through December, 1988, both defendants committed larceny by stealing approximately $500,000. The petition averred that upon the sale of two different homes owned by employees of Johnson & Higgins, a client of RMC (a subsidiary of CVM), Czajak and the co-defendant unlawfully retained the portion of the sale proceeds approximating the equity in the properties.

The district court held a six-day probation revocation hearing. At the hearing, Czajak and the co-defendant both testified, as did their probation officer, the only two other employees of RMC and two representatives of Johnson & Higgins. The district court found that the defendants had violated the Massachusetts larceny statute, and therefore had violated a condition of their probation. As a result, the district court revoked their probation and sentenced Czajak to 18 months and the co-defendant to 6 months of incarceration. While Czajak appeals from the district court's decision, the co-defendant's appeal has been withdrawn, and we need not consider it further.

## II. WAS THE MASSACHUSETTS LARCENY STATUTE VIOLATED?

Under 18 U.S.C. § 3651, district courts are authorized to "suspend the imposition or execution of sentence and place the defendant on probation for such period and

upon such terms and conditions as the court deems best." 18 U.S.C. § 3651. That section also gives district courts authority to "revoke or modify any condition of probation...." *Id.* Under 18 U.S.C. § 3653, district courts may, upon proof of a probation violation, "revoke the probation and require [the defendant] to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed." 18 U.S.C. § 3653.[1] It is well established that district courts have broad discretion over whether to revoke probation. *United States v. Morin,* 889 F.2d 328, 331 (1st Cir.1989). *See also Burns v. United States,* 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *Higdon v. United States,* 627 F.2d 893 (9th Cir. 1980); *In re Whitney,* 421 F.2d 337, 338 n. 3 (1st Cir.1970); *Trueblood Longknife v. United States,* 381 F.2d 17 (9th Cir.1967), *cert. denied,* 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968). And, as this court has recently decreed, "[t]heir decision will not be reversed absent a clear showing of an abuse of discretion." *United States v. Morin,* 889 F.2d at 331. *E.g., United States v. Sharif,* 893 F.2d 1212, 1215 (11th Cir. 1990); *United States v. Ramirez,* 675 F.2d 707 (5th Cir.1982); *United States v. Lacey,* 661 F.2d 1021 (5th Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982).

Probation revocation hearings consist of two analytically different components. *See Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636, *reh'g denied,* 473 U.S. 921, 105 S.Ct. 3548, 87 L.Ed.2d 671 (1985); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The first stage is wholly retrospective, and focuses on the factual question of whether the probationer has violated one of the conditions of his probation. If there has been a violation, the inquiry proceeds to the second stage, which is predictive and discretionary. It determines whether the violation warrants revocation, considering the nature of the violation and the history of the probationer.

*United States v. Morin,* 889 F.2d at 332. To satisfy its burden on the first prong, the government need not prove beyond a reasonable doubt that violation of a condition or conditions of probation has occurred.[2] *United States v. Cates,* 402 F.2d 473 (4th Cir.1968). *See also United States v. Markovich,* 348 F.2d 238 (2d Cir.1965). Instead,

[t]he standard of proof required is that evidence and facts be such as reasonably to satisfy the judge that the probationer's conduct has not been as required by the conditions of probation.

*United States v. Guadarrama,* 742 F.2d 487, 489 (9th Cir.1984). Thus, where, as here, the allegation of a probation violation is based on violation of state law, neither proof of a conviction, nor evidence beyond a reasonable doubt, is a necessary prerequisite for revocation of probation. *United States v. Carrion,* 457 F.2d 808, 809 (9th Cir.1972); *Amaya v. Beto,* 424 F.2d 363, 364 (5th Cir.1970); *Riggs v. United States,* 14 F.2d 5, 10 (4th Cir.), *cert. denied,* 273 U.S. 719, 47 S.Ct. 110, 71 L.Ed. 857 (1926). Indeed, the record need only demonstrate that the district court did not abuse its discretion in concluding that the evidence "reasonably satisfied" it that the probationer in fact had violated such a law. *E.g., United States v. Guadarrama,* 742 F.2d at 489; *United States v. Markovich,* 348 F.2d at 240–41.

Massachusetts General Laws chapter 266, section 30 provides, in pertinent part that:

(1) Whoever steals, or with intent to defraud obtains by a false pretense, or

---

**1.** Although 18 U.S.C. §§ 3651 & 3653 have since been repealed and renumbered, these sections are applicable to offenses, such as the instant one, committed prior to November 1, 1987.

**2.** Appellant places all his arguments in one basket, contending only that the district court improperly based revocation of his probation on violation of state law. He does not address the second stage of inquiry, and thus, finding the second basket empty of argument, we decline to reach into it.

whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another ... shall be guilty of larceny....

Mass.Gen.L. ch. 266, § 30. Massachusetts General Laws chapter 277, section 39 further defines larceny, when "used in an indictment," to mean:

The criminal taking, obtaining or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it; including all forms of larceny, criminal embezzlement and obtaining by false pretenses.

Mass.Gen.L. ch. 277, § 39. Under Massachusetts larceny law, a person "may be found to intend to deprive the owner of [property] permanently," *Commonwealth v. Salerno*, 356 Mass. 642, 648, 255 N.E.2d 318, 321 (1970), if he or she "takes the property without the authority of the owner and so uses or disposes of it as to show indifference [as to] whether the owner recovers possession...." *Id. See also Commonwealth v. Coyle*, 17 Mass.App.Ct. 982, 459 N.E.2d 119, *rev. denied*, 391 Mass. 1104, 462 N.E.2d 1374 (1984); *Commonwealth v. Mahnke*, 13 Mass.App.Ct. 1057, 434 N.E.2d 682 (1982). Thus, because commission of the offense rests upon the intent of the perpetrator, rather than upon the permanency of the deprivation, the government need not prove that the owner was permanently deprived of the property, or, as the district court properly instructed, that the defendant was enriched by the taking.

■ Despite appellant's assertions to the contrary, the evidence presented at the probation revocation hearing was more than sufficient to reasonably satisfy a district court that Czajak had violated the Massachusetts larceny statute. Not only did the evidence show that Czajak and his co-defendant were dominant forces in the business of RMC and its administration of the Johnson & Higgins account, but it also reasonably demonstrated that Czajak and his co-defendant were responsible for the collection and disposition of the funds received by RMC from the same real estate sales which formed the basis of the charges brought against appellant. Moreover, a significant period of time after those funds should have been transferred to Johnson & Higgins, the evidence indicated that the monies had been substantially depleted from disbursements made, among others, to Czajak, and thus could not be disbursed to Johnson & Higgins. Additionally, the evidence supported a conclusion that these disbursements, like all disbursements of RMC, were made at the direction of Czajak, who exercised complete authority over the disposition of the RMC funds. Finally, there was evidence that Czajak attempted to conceal the absence of the funds, both from Johnson & Higgins, and from his probation officer.[3] This evidence was more than sufficient to reasonably satisfy the district court that Czajak violated the Massachusetts larceny statute.

Appellant bases his entire argument on the theory that, since he did not have either the corporate authority or the legal duty to instruct RMC to transfer the monies it held to Johnson & Higgins, he cannot be said to have committed larceny of those monies. The argument completely misses the point of the larceny statute. The fact that other persons had ultimate responsibility for the finances of RMC does not preclude a finding that appellant "sidetracked" the monies into his or others' pockets. As the district court found:

although [Czajak] had no authority to sign checks, he had and exercised complete authority over disposition of corporation funds.

This finding is reasonably supported by the evidence.

■ Czajak's final argument is that revocation of probation based upon violation of a state criminal law violates the Constitution unless the right to trial by jury on the criminal charge is granted. Moreover, he contends, such a violation can only be as-

---

**3.** We note also that it is not insignificant that this sequence of facts closely parallels the virtually identical scheme that Czajak and the co-defendant admittedly perpetrated with RMC's predecessor, CVM.

cribed if there is proof beyond a reasonable doubt of his guilt. We find this argument peccant.

Upon review of applicable law, we can find no constitutional requirement that, in a probation revocation hearing predicated on alleged violation of a criminal law, a probationer be granted a jury trial, or that commission of the crime be proven beyond a reasonable doubt. *E.g., United States v. Manuszak,* 532 F.2d 311, 317 (3d Cir.1976); *United States v. Markovich,* 348 F.2d at 240–241. *Cf. Black v. Romano,* 471 U.S. at 613, 105 S.Ct. at 2258 (full panoply of procedural safeguards accorded to criminal trials not required in revocation hearing); *In re Whitney,* 421 F.2d at 338 (no presumption of innocence in probation revocation proceedings). This is because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [probation] restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).[4] It is, in effect, more a re-sentencing hearing than a taking of rights. *United States v. Bazzano,* 712 F.2d 826, 833 (3d Cir.1983). Thus, Czajak's constitutional rights were not violated by the procedures followed by the district court.

## III. CONCLUSION

Although Czajak disputes the district court's findings, there is adequate testimony from persons other than appellant supporting those findings. The fact that there is more than one version of the events at RMC is irrelevant in light of the fact finder's entitlement to choose between two permissible views of the evidence. *E.g., Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *O'Brien v. Papa Gino's of America, Inc.,* 780 F.2d 1067 (1st Cir.1986). Finally, that there may be a reasonable doubt as to whether Czajak committed larceny is irrelevant—in a probation revocation hear-

ing, the district court need only be reasonably satisfied that the probationer violated conditions of probation. *E.g., United States v. Lauchli,* 427 F.2d 258 (7th Cir.), *cert. denied,* 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970); *United States v. Nagelberg,* 413 F.2d 708 (2d Cir.1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970). Upon review, we are unable to say that the district court abused its discretion in so doing. *See, e.g., United States v. Manuszak,* 532 F.2d at 317. For these reasons, we affirm the decision of the district court in all respects.

*Affirmed.*

---

**4.** Although *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, is a parole revocation case, "commentators have agreed that revocation of ... [probation] where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." *Gagnon v. Scarpelli,* 411 U.S. at 782 n. 3, 93 S.Ct. at 1759 n. 3.