## COMMONWEALTH *vs.* PERDITE SCOTT.[1]

No. 02-P-486.

Middlesex. September 18, 2002. - January 8, 2003.

Present: BROWN, PORADA, & DUFFLY, JJ.

Further appellate review granted, 439 Mass. 1101 (2003).

*Practice, Criminal,* Motion to suppress, Findings by judge. *Constitutional Law,* Search and seizure, Reasonable suspicion. *Search and Seizure,* Threshold police inquiry, Probable cause.

A judge hearing a motion to suppress evidence in a criminal action erred in concluding that a police officer had seized the defendant, where the officer's use of a spotlight to enhance visibility was reasonable in the circumstances, the encounter occurred in an unconfined open space, there was no evidence that the officer had ordered the defendant to answer his questions or that the defendant had expressed a wish to leave, and the officer's use of a loudspeaker to communicate his request to the defendant was also reasonable under the circumstances [37-38]; moreover, although the officer's subsequent command to the defendant to stop and remain still constituted a seizure, the officer had the requisite reasonable suspicion for this stop, where the officer knew that the general description of the defendant matched that of the suspect, that the defendant was in approximately the same location where two rapes had occurred, and that the defendant was in this location at about the same time of night that the rapes had occurred, and where the officer was very familiar with the composite drawing of the suspect [38-39]; further, the encounter did not transform from an investigatory stop into an arrest when the officer ordered the defendant to sit inside his cruiser, where, in light of the circumstances surrounding the encounter, the officer did not act unreasonably [39-40]; and finally, the officer could consider, in combination with other circumstances, the fact that the defendant shared the same middle name as the suspect in determining the quantum of the officer's suspicion, even though the middle name was a common one [40-41].

INDICTMENTS found and returned in the Superior Court Department, two on September 30, 1998, and five on February 8, 1999, respectively.

[1]In two of the seven indictments, the defendant's first name appears as Pendite.

A pretrial motion to suppress evidence was heard by *Charles T. Spurlock*, J., and, following review by this court, 52 Mass. App. Ct. 486 (2001), further proceedings were had before him.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Marian T. Ryan*, Assistant District Attorney (*Esther M. Bixler*, Assistant District Attorney, with her) for the Commonwealth.

*Randall K. Power* for the defendant.

PORADA, J. This is an appeal by the Commonwealth from the allowance of the defendant's motion to suppress after we had vacated a motion judge's initial allowance of the motion to suppress and remanded the case to the Superior Court for further proceedings. See *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 496 (2001). We reverse.

In response to our remand order, the judge held a hearing. The only witness to testify at the hearing was the arresting officer, a State trooper, who also had testified at the initial hearing. In his original decision, the judge found that the officer had shone a spotlight at night on the defendant, whose general description fit that of a suspect in two rapes and who at the time was descending a path where the rapes had occurred at about the same time of night. The judge determined that when the officer then asked the defendant to come back and talk to him, a seizure had occurred for which the officer did not have reasonable suspicion. Upon remand, the judge added to his original findings that the officer had used a loudspeaker when he told the defendant to come back and talk to him. Based on this aggregation of facts, the motion judge again ruled that a seizure had occurred for which the officer lacked reasonable suspicion, and allowed the motion to suppress.

In *Commonwealth* v. *Scott, supra* at 493, we ruled that the judge erred as matter of law in concluding that a seizure had occurred at this juncture because the use of a spotlight to enhance visibility was reasonable in the circumstances, the encounter occurred in an unconfined open space, and there was no evidence that the officer had ordered the defendant to answer his questions or that the defendant had expressed a wish to

leave. We do not believe that the judge's additional finding that the officer had used a loudspeaker to communicate his request that the defendant come back and talk to him changed the nature of the encounter. The use of the loudspeaker was reasonable because the encounter occurred at nighttime on a public highway at a time when the defendant was descending a path with heavy vegetation some thirty to forty feet away from the officer.

However, this does not end our inquiry. The judge on remand ruled that, even if the initial exchange did not amount to an improper seizure, the defendant was seized without reasonable suspicion when, in response to the officer's request, he started to walk back toward the officer and, at a distance of fifteen to twenty feet from the officer, was ordered to stop and stand still while under the beam of the spotlight. The judge discredited the officer's testimony that, when the defendant continued to walk toward him, he observed that the defendant had thick lips and small marks on his face. This information was significant because it matched the detailed description of the assailant given by the two alleged rape victims. If the judge had believed this testimony, there is no question that the stop would have been proper. Compare *Commonwealth* v. *Cheek*, 413 Mass. 492, 496 (1992) ("The officers possessed no additional physical description of the suspect that would have distinguished the defendant from any other black male in the area such as the suspect's height and weight, whether he had facial hair, unique markings on his face or clothes, or other identifying characteristics"), with *Commonwealth* v. *Carrington*, 20 Mass. App. Ct. 525, 528 (1985) (information that a rape had occurred in an apartment at a particular address near the location where the defendant was found; that the rapist had been described as a black male in his thirties with a receding hairline, a moustache and a beard, and wearing a blue running jacket and dark shorts; and that the defendant fit the physical description but was wearing different clothing was sufficient to stop the defendant). The Commonwealth challenges the judge's rejection of this testimony. We conclude that the judge, as the fact finder and assessor of the credibility of a witness, could reject this aspect of the officer's testimony. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). However, although we agree with the judge

that the officer's command to the defendant that he stop and remain still amounted to a seizure, see *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 278-279 (2002) (officer's action in getting out of the cruiser, following the defendant and telling him to "stop" constituted a pursuit and seizure), we reject the judge's conclusion that the officer did not have the requisite reasonable suspicion for this stop.

Reasonable suspicion must be based on specific and articulable facts and any reasonable inferences that follow from those facts in light of the officer's knowledge and experience. *Commonwealth* v. *Silva*, 366 Mass. 402, 406 (1974). While "[n]either evasive behavior, proximity to a crime scene, nor matching a general description is alone sufficient to support the reasonable suspicion necessary to justify a stop and frisk . . . [e]ach of these factors may, however, be considered by the police, and in combination may allow the police to narrow the range of suspects to particular individuals." *Commonwealth* v. *Mercado*, 422 Mass. 367, 371 (1996). Here, the officer knew that the general description of the defendant matched the suspect (a tall, muscular black man with short hair); that the defendant was in approximately the same location where the two rapes had occurred; and that the defendant was in this location at about the same time of night that the rapes had occurred. In addition, the officer, having been specifically assigned to investigate the rapes, see *Ornelas* v. *United States*, 517 U.S. 690, 700 (1996) (police officer may draw on his own experiences in assessing whether probable cause exists), was very familiar with the composite drawings of the suspect, and would have had those in mind when the defendant walked toward him. The combination of those factors provided the officer with the requisite reasonable suspicion for the seizure. See *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 231, 234 (1982) (although the stop was not at issue, in dicta we stated that a stop was justified where four women had been sexually assaulted in a certain area during a four-month period, the assailant usually approached his victims on the same type of vehicle [a moped] that the defendant was riding at the time of the stop, and the defendant resembled a composite sketch of the assailant).

The Commonwealth also challenges the judge's ruling on

remand that the defendant was placed under arrest without the requisite probable cause when the officer ordered him to sit inside the cruiser. In resolving whether this action transformed the investigatory stop into an arrest, "[s]everal factors must be considered . . . including the length of the encounter, the nature of the inquiry, the possibility of flight, and the danger to the safety of the officers." *Commonwealth* v. *Williams*, 422 Mass. 111, 118 (1996). Before asking the defendant to sit in the back seat of the cruiser, the officer had learned that the defendant's middle name was "Lee," which was the middle name the assailant had mentioned to one of the alleged victims. This of course would have heightened the trooper's existing reasonable suspicion. See *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 323 (2001), quoting from *Commonwealth* v. *Williams*, *supra* at 116 (in evaluating whether the police exceeded the permissible scope of a stop, the degree of suspicion must be proportional to the level of intrusiveness). In addition, the stop had occurred in an open area near a public highway, and the defendant had stated that he had no identification. In light of those facts, even though the judge found that the defendant did not pose a safety risk, the trooper did not act unreasonably in asking the defendant to sit in the back of the cruiser to continue his questioning of the defendant. The motion judge erred in concluding that this action converted the stop into an unlawful arrest. See *Commonwealth* v. *Gordon*, 47 Mass. App. Ct. 825, 826-827 (1999) (placing a suspect into a cruiser does not in and of itself transform a stop into an arrest).[2] The motion to suppress should have been denied.

The Commonwealth also challenges the judge's finding that "Lee" is a common name and was not relevant to assessing the trooper's "probable cause."[3] It was not improper for the judge,

---

[2]Once it emerged during the questioning that ensued thereafter that the defendant lived in Cambridge with his sister and had taken the Watertown Mall bus to this location (which matched information that the assailant in one of the rapes had provided to one of the victims); the defendant had a prior conviction for rape; and the defendant would not participate in an identification procedure, the officer had sufficient probable cause to make an arrest. See *Commonwealth* v. *Alvarado*, 420 Mass. 542, 549-551 (1995) (combination of factors gives rise to probable cause).

[3]The judge was concerned with the issue of probable cause since he had determined — incorrectly, we conclude — that by placing the defendant into the cruiser, the officer had transformed to the arrest into a stop.

as the fact finder, "to rely on [his] general knowledge of matters commonly known within the community." *Commonwealth* v. *Kingsbury*, 378 Mass. 751, 753 (1979). Accordingly, we believe that he could find that Lee was a common name. However, we disagree with his conclusion that the trooper could not consider the fact that the assailant had used the same middle name during his encounter with one of the rape victims as a factor in determining the quantum of the officer's suspicion. A common name in combination with other circumstances may be a link in the chain in establishing reasonable suspicion or probable cause.

*Order allowing motion to suppress reversed.*